**Declaration of Cody Clarke**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>ONE TABLE RESTAURANT BRANDS, LLC, *et al.*,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. _____<br><br>(Joint Administration Requested) |

**DECLARATION OF CODY CLARKE IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTIONS 105, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 4001, AND LOCAL RULE 4001-2, FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING PRIMING AND OTHER LIENS AND SUPER-PRIORITY CLAIMS AND ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; AND
AND (IV) GRANTING RELATED RELIEF**

I, Cody Clarke, declare as follows:

1.　　　I am a Manager of CR3 Partners, LLC ("CR3"), proposed financial advisors for the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.　　　Except as otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath. I am submitting this declaration in support of the Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming and Other Liens and Super-Priority Claims and Adequate Protection; (III)

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers are (1) One Table Restaurant Brands, LLC, a Delaware limited liability company (9853); (2) One Table Restaurant Operations, LLC, a Delaware limited liability company (7280), (3) Tender Greens OpCo, LLC, a Delaware limited liability company (7827); (4) Tocaya Holdings LLC, a Nevada limited liability company (8815); (5) Tocaya Organica, LLC, a California limited liability company (6720); (6) Tocaya Management LLC, a Nevada limited liability company (6789); (7) BLT Steak LA LLC, a California limited liability company (4688); (8) Tocaya Venice LLC, a California limited liability company (0159); (9) Tocaya South Bay, LLC, a California limited liability company (0401); (10) Tocaya Toluca, LLC, a California limited liability company; and (11) Tocaya Santa Monica LLC, a California limited liability company (8134). The Debtors' mailing address is: 1201 W. 5th Street, Suite T-400, Los Angeles, CA 90017.

Modifying the Automatic Stay; and (IV) Granting Related Relief (the "<u>DIP Motion</u>"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the DIP Motion.

3. I am one of the individuals at CR3 with primary responsibility for CR3's engagement with the Debtors. References to actions taken by "CR3" within this Declaration include actions I took in conjunction with other members of CR3 that I work with in connection with the services rendered to the Debtors. CR3 is a leading advisory firm that delivers a broad range of interrelated strategic, operational, and financial advisory services. Specifically, CR3's services include, without limitation, assessments of an organization's financial and operational condition, performance management and improvement, interim and crisis management, restructuring and turnaround consulting, merger and acquisition services, and advisory and guidance through the bankruptcy process.

4. I am a certified public accountant and have over nine years of financial, accounting, and mergers and acquisitions experience in the manufacturing, healthcare, consumer products, and food and beverage industries. I obtained my Bachelor of Administration from the University of Indianapolis.

5. Throughout my career, I have served as an advisor and interim manager to various companies. In such capacities, I have led projects involving the financial and operation stabilization of companies, the placement of debt and equity, and merger and acquisition activities.

**CR3's Prepetition Engagement**

6. On May 20, 2024, CR3 was engaged by the Debtors to provide financial advisory services related to exploratory discussions regarding bankruptcy proceedings and to provide recommendations on potential outcomes and strategy regarding the value of and impact of bankruptcy on the Debtors' operations and assets.

7. Upon CR3's engagement, CR3 analyzed the Debtors': (1) preexisting weekly and daily operating cash model, (2) non-operating liabilities, (3) ability to fund their businesses on a go-forward basis based on operating revenue, and (4) potential costs in the event of bankruptcy. Thereafter, CR3 amended the Debtors' preexisting models to account for such liabilities and go-forward needs.

8. On or about June 4, 2024, CR3 met with the Debtors' board of directors to demonstrate its findings and the necessary capital raise to stabilize the business.

9. Thereafter, CR3 and the Debtors' management met with Breakwater to discuss potential out-of-court and bankruptcy resolutions and engaged in arms-length negotiations regarding a postpetition debtor-in-possession credit facility.

**DIP Financing and Budget**

10. As a result of such efforts, and in order to fund their working capital needs and keep their operations running through a sale process, the Debtors have secured a $3.3 million postpetition senior secured super-priority debtor-in-possession credit facility (the "DIP Facility") subject to Court approval. The DIP Facility is subject to a budget. The Initial Approved Budget is attached to the Interim Order as Exhibit __ (the "Budget").

11. In developing the Budget, CR3 undertook an analysis of the incremental liquidity that would be necessary to maintain operations in connection with the filing of the Cases. Based on the Debtors' 13-week cash flow forecast, the Debtors determined that they will have additional net cash needs of approximately $3,200,000 in the first 13-weeks of the Cases. I believe that the Budget is reasonable based on the Debtors' historical performance and needs and from my discussions with the Debtors' management regarding day-to-day operations and needs.

12. It is my belief that the Debtors cannot sustain operations if they cannot obtain postpetition funds by way of a debtor-in-possession loan and therefore the Debtors must obtain the DIP Credit Facility from Breakwater. The Debtors require the financing provided under the DIP Credit Facility for the operation of their businesses, to preserve their going concern value, to pay vendors, suppliers and customers, to satisfy payroll obligations, to pay for certain costs and expenses related to the Cases and to satisfy the Debtors' other working capital needs. Access to sufficient working capital and liquidity made available through the DIP Credit Facility is vital to the preservation and maintenance of the Debtors' going concern value and to the Debtors' ultimate goal of selling substantially all of their assets.

13. The DIP Facility, coupled with cash flow from operations, will permit the Debtors to fund their businesses through a controlled and orderly sale process. Without the funding provided by the DIP Facility, the Debtors will experience an immediate liquidity shortfall and will be unable to conduct a sale process in a way that preserves value for its creditors. Thus, the DIP Facility will enhance the Debtors' ability to minimize immediate disruption to their businesses and instill confidence among employees and service providers and ensure their continued support pending a sale of the Debtors' assets.

14. In my opinion, access to sufficient working capital and liquidity made available through the DIP Facility, as requested in the DIP Motion, is vital to the preservation and maintenance of the Debtors' going concern value and to the Debtors' ultimate goal of selling substantially all of their assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: July 17, 2024                             /s/ Cody Clarke
                                                 Cody Clarke