**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ONE TABLE RESTAURANT BRANDS, LLC, *et al.*,[1] | Case No.24-11553 (KBO) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

The jointly administered debtors and debtors in possession herein (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases") will use the procedures set forth herein (the "Bidding Procedures") in connection with a sale or disposition of substantially all of the Debtors' assets (the "Assets") in one or more sale transactions (each, a "Sale Transaction").

On August 1, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders: (I) (A) Approving Bidding Procedures and Protections in Connection With a Sale of Substantially All of Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances and Interests; (B) Authorizing the Debtors to Designate a Stalking Horse Bid; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form And Manner of Notice Thereof; and (E) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Leases; (II) (A) Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement(s), Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases; and (III) Granting Related Relief* (the "Bidding Procedures Motion").[2]

By the Bidding Procedures Motion, the Debtors sought, among other things, entry of an order approving the Bidding Procedures for soliciting bids for, conducting an auction (the "Auction") of, and consummating one or more Sale Transactions of, the Assets.

To facilitate the sale process, and subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), the Debtors may enter into an asset purchase agreement (a "Stalking Horse Agreement") with one or more potential bidders (each, in such

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers are (1) One Table Restaurant Brands, LLC, a Delaware limited liability company (9853); (2)  One Table Restaurant Operations, LLC, a Delaware limited liability company (7280), (3) Tender Greens OpCo, LLC, a Delaware limited liability company (7827); (4) Tocaya Holdings LLC, a Nevada limited liability company (8815); (5) Tocaya Organica, LLC, a California limited liability company (6720); (6) Tocaya Management LLC, a Nevada limited liability company (6789); (7) BLT Steak LA LLC, a California limited liability company (4688); (8) Tocaya Venice LLC, a California limited liability company (0159); (9) Tocaya South Bay, LLC, a California limited liability company (0401); (10) Tocaya Toluca, LLC, a California limited liability company; and (11) Tocaya Santa Monica LLC, a California limited liability company (8134).  The Debtors' mailing address is: 1201 W. 5th Street, Suite T-400, Los Angeles, CA 90017.

[2] All capitalized terms not otherwise defined herein shall have the meaning set forth in the Bidding Procedures Motion.

capacity, a "Stalking Horse Bidder") for the purpose of establishing a minimum acceptable bid for the Assets (a "Stalking Horse Bid") in accordance with the terms and procedures set forth herein.

On [ ], 2024, the Bankruptcy Court entered an order (the "Bidding Procedures Order") that, among other things, authorized the Debtors to determine the highest or otherwise best price for the Assets through the process and procedures set forth therein and herein (the "Bidding Procedures").

## I.    SALE

The Debtors seek to sell substantially all of the Debtors' assets (in whole or in part) through the Bidding Procedures set forth herein. The sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the Court pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

The ability to undertake and consummate any sale(s) of the Assets shall be subject to competitive bidding as set forth herein and approval by the Court. As set forth herein, the Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for an individual Asset, even if such bid is the highest or otherwise best bid for such individual Asset, is subject to higher or otherwise better bids on packages of Assets that include the individual Asset. Additionally, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets (including credit bids) that are, in the aggregate, higher or otherwise better bids.

Any party interested in submitting a bid for any of the Debtors' Assets should contact Hilco Corporate Finance, LLC, Attn: Teri Stratton, tstratton@hilcocf.com, or Richard Klein, rklein@hilcocf.com.

## II.    KEY DATES AND DEADLINES

| EVENT | DATE |
|---|---|
| Deadline for the Debtors to file and serve the Stalking Horse Notice<br><br>"Stalking Horse Notice" means (a) the Stalking Horse Agreement; and (b) a disclosure stating (i) whether the Stalking Horse Bidder is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, as well as any common identity of incorporators, directors, officers, or controlling stockholders between the Stalking Horse Bidder and the Debtors; (ii) whether the Stalking Horse Bid includes a credit bid; and (iii) whether the Stalking Horse Bid contemplates bid protections, including, but not limited to, a "break-up" fee and expense reimbursement. | August 23, 2024 |

| | |
|---|---|
| Service of Bidding Procedures Order and Sale Notice | Two (2) business days after entry of Bidding Procedures Order |
| Deadline for the Debtors to file and serve the Assumption and Assignment Notice including proposed Cure Costs | Two (2) business days after entry of Bidding Procedures Order |
| Deadline for the Debtors to Publish Publication Notice | Five (5) business days after entry of the Bidding Procedures Order |
| Deadline for Debtors to serve Stalking Horse Bidder's Adequate Assurance Information (as defined herein) | September 6, 2024 |
| Deadline to file any objections to Cure Costs and Stalking Horse Objections<br><br>"Stalking Horse Objections" means (i) all objections related to the sale of the Assets to the Stalking Horse Bidder, including the particular terms of any proposed Sale Transaction (including, but not limited to, any bid protections), the sale of Assets free and clear of all liens, claims, interests and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, the entry of any Sale Order, the Stalking Horse Bid, and Stalking Horse Bidder; but (ii) *not* objections with respect to the Stalking Horse Bidder's adequate assurance of future performance or other objections related to the assumption and assignment of executory contracts or unexpired leases to the Stalking Horse Bidder ("Stalking Horse Adequate Assurance Information") or conduct of the Auction. | September 12, 2024 at 4:00 p.m. (prevailing Eastern time) |
| Hearing on Stalking Horse Objections | September 19, 2024 at 9:30 a.m. (prevailing Eastern time) |
| Deadline to file any Stalking Horse Adequate Assurance Information Objections | September 20, 2024 at 4:00 p.m. (prevailing Eastern time) |
| Bid Deadline | September 25, 2024 at 4:00 p.m. (prevailing Eastern time) |
| Auction (if necessary) | September 27, 2024 at 10:00 a.m. (prevailing Pacific time)/ 1:00 p.m. (prevailing Eastern time) |

| | |
|---|---|
| Deadline to file Notice of Auction Results | September 28, 2024 at 12:00 p.m. (prevailing Eastern time) |
| Deadline to file Post-Auction Objections<br><br>"Post-Auction Objection" means any objection to conduct at the Auction, and any supplemental objections that could not have been raised by the deadline to file the Stalking Horse Objections | September 30, 2024 at 4:00 p.m. (prevailing Eastern time) |
| Sale Hearing for Stalking Horse Bid (including adjudication of Post-Auction Objections, Cure Cost Objections and Stalking Horse Adequate Assurance Information Objections)<br><br>If the Successful Bid is not the Stalking Horse Bid, the Sale Hearing will be adjourned to a later date, and a status conference (the "Sale Status Conference") will be held on October 1, 2024 at 9:30 a.m. (prevailing Eastern Time) at which time new deadlines will be set for objections related to such Successful Bid(s) including with respect to adequate assurance of performance by such Successful Bidder(s). | October 1, 2024 at 9:30 a.m. (prevailing Eastern time) |
| Reserved date for continued Sale Hearing to address timely filed Stalking Horse Objections not resolved at the hearings on September 19, 2024 or October 1, 2024 (if any). | October 7, 2024 at _____ _.m. |
| Deadline to Consummate Approved Sale Transactions | No later than fourteen (14) days after entry of the Sale Order for any Successful Bid that is not a Stalking Horse Bid, *but* no more than seven (7) days if the Successful Bid is the Stalking Horse Bid |
| Backup Bid Expiration Date | Twenty-eight (28) days after entry of the Sale Order |

## III.    DUE DILIGENCE

The Debtors have posted copies of all material documents related to the Assets to the Debtors' confidential electronic data room (the "Data Room"). Each person or entity that desires to participate in the Auction process (each, a "Prospective Bidder") and seeks access to the Data Room must first deliver to each of the Bid Notice Parties (as defined herein) the following:

      A.     An executed confidentiality agreement in form and substance satisfactory to the Debtors (unless such party is already a party to an existing confidentiality

agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

B.      Sufficient information to allow the Debtors to determine that the interested party intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures and that such Prospective Bidder has the financial and managerial wherewithal to submit a Qualified Bid and to consummate the sale transaction(s) contemplated thereby.

The Debtors shall grant any Prospective Bidder (upon satisfaction of the above participation requirements), access to the Data Room or additional information allowing such Prospective Bidder to conduct due diligence on the potential acquisition of some or all of the Assets. Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who (i) is not a Prospective Bidder, (ii) does not comply with the participation requirements set forth above, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, and (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (provided that, in the case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation or law). Notwithstanding the foregoing, the Debtors reserve the right, in their discretion, to withhold or limit access to any information that the Debtors determine to be sensitive or otherwise not appropriate to disclose to any Prospective Bidder.  If any such information is withheld or limited by the Debtors, the Debtors shall notify the Prospective Bidder of the general nature of and basis for withholding or limiting such information.

The Debtors shall provide counsel for the Committee and the Office of the United States Trustee for the District of Delaware with a list of parties denied access to the Data Room and, as a result, to which information was not provided pursuant to this section and the reasons therefor. This list shall be provided no less than weekly.

The Debtors may terminate access to the Data Room and any other non-public information in their reasonable discretion and after consultation with the Consultation Parties (as defined herein) at any time, including if (a) a Prospective Bidder fails to become a Qualified Bidder (as defined herein) or (b) these Bidding Procedures are terminated. The Prospective Bidder shall return or destroy any nonpublic information the Debtors or their advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Prospective Bidder. The Debtors will work to accommodate all reasonable requests from any Prospective Bidders for additional information and due diligence access. Each Prospective Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined herein). All due diligence

requests shall be directed to Hilco Corporate Finance, LLC, Attn: Teri Stratton, tstratton@hilcocf.com, or Richard Klein, rklein@hilcocf.com.

## IV.    BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a bid (a "Bid") on or before **September 25, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The Debtors may, in their reasonable judgment, and in consultation with the Consultation Parties, extend the Bid Deadline for all or certain Prospective Bidders.

## V.    BID REQUIREMENTS

### A.    Qualified Bid Requirements

To qualify as a "Qualified Bid," a Bid must be in writing and determined by the Debtors to satisfy the following requirements:

1.  Identification of Bidder. A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the applicable Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such Bid) or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such Bid) the Auction in connection with such Bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtors or their non-Debtor affiliates, the DIP Lender (as defined below), any other known Prospective Bidder or Qualified Bidder, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors or their non-Debtor affiliates).

2.  Purchased Assets. A Qualified Bid must identify the following:

    a.  the Assets to be purchased (including any then-known executory contracts and unexpired leases (collectively, the "Contracts")) such Prospective Bidder wishes to bid on.

    b.  the liabilities (including applicable Cure Costs if any, to be assumed by the Prospective Bidder in the Sale Transaction), including any debt to be assumed; and

    c.  if a Bid is for less than the entire business, an allocation of the purchase price across the individual desired Assets.

3.  Form of Consideration.

    a.  Credit Bidding. For the avoidance of doubt and subject to the terms of any interim and final orders on the Motion of Debtors Pursuant to Sections 105,

362, 363, 364, 503 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use of Cash Collateral; (II) Granting Priming and Other Liens and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief, the Committee's rights to object to or challenge any credit bid pursuant to section 363(k) or otherwise are fully reserved. For the further avoidance of doubt, the Debtors reserve the right to seek to deem (1) a Bid submitted by the DIP Lender or Prepetition Lender to be a Qualified Bid, notwithstanding the requirements in these Bidding Procedures that a Bid must satisfy to be a Qualified Bid, and (2) the DIP Lender and Prepetition Lender to be Qualified Bidders without requiring them to provide a Good Faith Deposit, even in the event they submit a bid.

b.  <u>Form of Consideration and Allocation</u>. A Qualified Bid must propose a purchase price payable in cash and specified assumed liabilities. Bids proposing a purchase price other than in cash shall not be Qualified Bids (unless acceptable to the Debtors after consultation with the Consultation Parties).

4.  <u>Proposed Asset Purchase Agreement and Sale Order</u>: A Qualified Bid must constitute a binding and irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the Bid (each, a "<u>Proposed Asset Purchase Agreement</u>"). A Proposed Asset Purchase Agreement shall: (a) be duly authorized and executed; (b) be based on, and marked against the applicable Stalking Horse Agreement (if any) or such other form purchase agreement provided by the Debtors to reflect the proposed Sale Transaction and to show any other proposed modifications to the form purchase agreement; (c) specify the proposed purchase price for the applicable Assets; and (d) identify any then-known Assigned Contracts proposed for or that may be proposed for assumption and assignment in connection with the proposed Sale Transaction.

5.  <u>Financial Information</u>. A Qualified Bid must include the following:

a.  a statement that the Prospective Bidder is financially capable of timely consummating the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

b.  sufficient evidence, as reasonably determined by the Debtors (in consultation with the Consultation Parties), to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to timely consummate the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; and

c.  Adequate Assurance Information (as defined herein) with respect to any Contracts included or that may be included in the Prospective Bidder's Bid.

6.      Good Faith Deposit. Each Qualified Bid must be accompanied by a good faith deposit (each, a "Good Faith Deposit") in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price for the Assets. All Good Faith Deposits shall be deposited into a trust account maintained on behalf of the Debtors (and to be designated by Debtors) and handled in accordance with these Bidding Procedures. No party shall have any lien on or claim in the Good Faith Deposit. To the extent a Qualified Bidder increases the purchase price before, during, or after the Auction, the Debtors reserve the right after consultation with the Consultation Parties to require that such Qualified Bidder adjust its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price. The Debtors reserve the right after consultation with the Consultation Parties to increase or decrease the Good Faith Deposit for one or more Qualified Bidders in their sole discretion, provided, the Debtors may not waive, or reduce to a nominal amount, any Good Faith Deposit requirement without the consent of the Consultation Parties.

7.      Adequate Assurance. A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with Section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Assigned Contracts included in its Bid. The Debtors (in consultation with the Consultation Parties) may require the following information in connection with demonstrating adequate assurance of future performance: information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Assigned Contracts included in the Bid, which information may include: (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control; (ii) financial statements; (iii) tax returns (iv) annual reports; and (v) summaries of the proposed assignee's experience in the industry, including the number of restaurants currently operating and all trade names used (the information described herein, the "Adequate Assurance Information"). All Adequate Assurance Information must be in a form that will permit its immediate dissemination to the applicable Counterparties (as defined herein). The Debtors will serve the Stalking Horse Adequate Assurance Information on all applicable Counterparties (and their counsel if known) or before September 6, 2024.

8.      Representations and Warranties. A Qualified Bid must include the following representations and warranties:

a.      a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Assets prior to submitting its Bid;

b.      a statement that the Prospective Bidder has relied solely upon its own independent review, investigation and/or inspection of any relevant documents and the Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties or guaranties

whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith;

c.     a statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

d.     a statement that the Prospective Bidder agrees to be bound by the terms of the Bidding Procedures.

9.    <u>Authorization</u>. A Qualified Bid must: (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of any bid for the Assets, participation in the Auction and closing of the Sale Transaction contemplated by the Prospective Bidder's proposed asset purchase agreement; or (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed Sale Transaction, provide written evidence acceptable to the Debtors of authorization and the approval by the equity holder(s) of such Prospective Bidder.

10.    <u>Joint Bids</u>. The Debtors will be authorized to approve joint Bids in their discretion on a case-by-case basis (in each case in consultation with the Consultation Parties).

11.    <u>Other Requirements</u>. A Qualified Bid must:

a.     state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid (as defined herein) for the Assets (each such bid, a "<u>Backup Bid</u>");

b.     state that the Bid, as may be modified before or during the Auction, represents a binding, irrevocable, good-faith and bona fide offer to purchase the Assets and is not subject to or conditioned on any due diligence, financing, or other contingency (other than the conditions to closing under the applicable agreement), and is irrevocable until  twenty-eight (28) days after entry of the Sale Order (the "<u>Backup Bid Expiration Date</u>");

c.     expressly state and acknowledge that the Prospective Bidder shall not be entitled to a break-up fee, termination fee, expense reimbursement or other "bidding protection" in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Transaction process, unless otherwise granted by the Debtors (in consultation with the Consultation Parties) and approved by an order of the Court;

d.     identify with particularity each and every condition to closing and all Contracts to be assumed and assigned;

e.      state that the Prospective Bidder is committed to closing the Sale Transaction contemplated in its Bid as soon as practicable and in any case no later than fourteen (14) days after entry of the Sale Order;

f.      specify whether the Qualified Bidder intends to hire any of the Debtors' employees;

g.      expressly waive any claim or right to assert any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code or the payment of any broker fees or costs in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Transaction process;

h.      include a covenant to cooperate with the Debtors (i) to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and any other applicable regulatory requirements and (ii) to obtain Court approval of the Sale Transaction;

i.      state or otherwise estimate the types of transition services, if any, the Prospective Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Prospective Bidder's Bid were selected as the Successful Bid for the applicable Assets;

j.      certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtors (in consultation with the Consultation Parties);

k.      include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

l.      include contact information for the specific person(s) the Debtors should contact in the event they have any questions about the Prospective Bidder's Bid.

**B.      <u>Landlord Bids</u>**

With respect to a bid for any real property lease submitted by the landlord (or its affiliate) counterparty to that real property lease, the landlord may deduct from its Good-Faith Deposit the amount of any undisputed monetary obligations, as determined by the Debtors, in their discretion and in consultation with the Consultation Parties, that constitute the cure amount for the applicable real property lease. Any of the Debtors' landlords may (a) submit a bid on any real property lease to which that landlord (or its affiliate) is a counterparty and (b) include some or all of the applicable landlord's undisputed cure amounts and/or administrative expense claim with respect to its lease as consideration for its bid. In connection therewith, to be a Qualified Bid, the landlord must (1)

satisfy Sections V.A.4 and 9 related to the components of a Qualified Bid and (2) accompany such bid with (a) evidence of its ability to consummate the contemplated transaction and (b) a lease termination agreement, which will become effective only if the landlord executing the lease termination agreement is the Successful Bidder for its lease. For the avoidance of doubt, a landlord bidding on a real property lease to which that landlord (or its affiliate) is a counterparty shall not be required to provide adequate assurance information.

**C.**    **Bid Review Process**

The Debtors, in consultation with the Consultation Parties, will review each Bid received from a Prospective Bidder to determine whether it meets the requirements set forth above. Based upon their evaluation of the content of each Bid, the Debtors may, as they deem appropriate in their business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, engage in negotiations with any Prospective Bidder for the purposes of: (i) curing any deficiencies in a Bid that prevents it from constituting a Qualified Bid; (ii) improving the terms of the Prospective Bidder's Bid; or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets. The Debtors will inform the Consultation Parties of any infirmity with respect to any Bid and any further in respect of same.

A Bid received from a Prospective Bidder for all or any portion of the Assets that the Debtors determine meets the requirements set forth above, and is otherwise satisfactory to the Debtors, in consultation with the Consultation Parties, will be considered a Qualified Bid and each Prospective Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids as reasonably in advance of the commencement of the Auction as is practicable, but no later than twenty (24) hours before the Auction. For the avoidance of doubt, any Stalking Horse Agreement will be deemed a Qualified Bid, and any Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Prospective Bidder must satisfy to be a Qualified Bidder.

In evaluating a Bid, the Debtors may take into consideration any and all factors that the Debtors deem reasonably pertinent, including, without limitation:

> a.    the amount of the proposed purchase price;
>
> b.    any Assets and liabilities included in, or excluded from, the Bid, including any Contracts marked for assumption and assignment;
>
> c.    the value to be provided to the Debtors under the Bid, including the net economic effect on the Debtors' estates (taking into account any wind-down expenses, the obligations owed to the DIP Lender and Prepetition Lenders, and additional outstanding debt, in each case, as applicable);
>
> d.    any benefit to the Debtors' estates from any assumption or waiver of liabilities contemplated by the Bid;

e.      any benefit to the Debtors' estates arising from the avoidance of additional costs that may be incurred as a result of the Bid;

f.      the structure of the proposed Sale Transaction and any attendant execution risk, including conditions to, timing of and certainty of closing, termination provisions, financing contingencies, availability of financing and general financial wherewithal to meet all commitments, and any required governmental approvals;

g.      the impact of the proposed Sale Transaction on employees, to the extent such considerations shall not negatively impact creditors;

h.      the impact of the proposed Sale Transaction on the Debtors' general unsecured creditors, including trade creditors, landlords, judgment creditors, licensees, clients and any other parties in interest; and

i.      any other factors the Debtors may reasonably deem relevant and consistent with their fiduciary duties.

The Debtors will make a determination in consultation with the Consultation Parties regarding the Bids that qualify as Qualified Bids and as Baseline Bids and will notify bidders whether they have been selected as Qualified Bidders as reasonably in advance of the commencement of the Auction as is practicable. A Qualified Bidder shall not (without the consent of the Debtors), modify, amend or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the bid, as determined by the Debtors in their business judgment, in consultation with the Consultation Parties.

The Debtors, in their business judgment in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things, (i) is on terms that are more burdensome or conditional than the terms of any Stalking Horse Bid; (ii) requires any indemnification of the Prospective Bidder in its asset purchase agreement; (iii) is not received by the Bid Deadline; (iv) is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; (v) seeks any bid protections; and/or (vi) does not, in the Debtors' determination, include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates.

The Debtors may, in their sole discretion after consultation with the Consultation Parties, among other things: (i) amend or waive the conditions precedent to qualifying as a Qualified Bidder; (ii) extend the Bid Deadline as to any party or with respect to any Assets; (iii) with respect to any Bid that is not a Qualified Bid, the Debtors may provide (but shall not be obligated to provide) the Bidder with the opportunity to remedy any deficiencies prior to the Auction; and/or (iv) postpone or cancel the Auction and terminate the proposed sale(s) for any Assets. Subject to any applicable deadlines, the rights of the Consultation Parties to contest any such actions by the Debtors as part of a sale objection or other pleading are fully preserved.

**D.    Stalking Horse Protections**

To the extent that a Qualified Bid containing bid protections is selected as the Stalking Horse Bidder, all rights of the Office of the United States Trustee for the District of Delaware and the Committee are fully reserved as to the designation of the Stalking Horse Bidder and any such protections.

# VI.    THE AUCTION

If the Debtors receive more than one Qualified Bid for an Asset or combination of Assets, the Debtors will conduct an auction for such Asset(s) (the "Auction"). If more than one Qualified Bid exists for acquiring specific Assets or combinations of the Assets, then the Debtors may, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, first conduct a separate Auction (a "Sub-Auction") for such Assets that have at least one Qualified Bid pursuant to the Bidding Procedures.

In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Claims Agent Website, a notice containing the following information, as applicable: (i) a statement that the Auction for the relevant Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such Successful Bid, including any assumption and assignment of Contracts contemplated thereby; and (iv) the date, time and location of the applicable Sale Hearing.

The Auction, if required, will be conducted on September 27, 2024, at 10:00 a.m. (prevailing Pacific Time), in person at Shulman Bastian Friedman & Bui LLP, 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, after providing notice to the Sale Notice Parties; provided, however, the Debtors shall have the right to hold the Auction remotely, including telephonically or by other electronic means (including, without limitation, video conferencing) as the Debtors may choose in their sole discretion. If held, the Auction proceedings will be transcribed and/or video recorded.

**A.    Participants and Attendees**

Only Qualified Bidders are eligible to participate in the Auction or any Sub-Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. At least one (1) day prior to the Auction or any Sub-Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction. Qualified Bidders participating in the Auction or specific Sub-Auction must appear in person at the Auction or Sub-Auction, as applicable (unless the Auction takes place remotely), or through a duly authorized representative.

Subject to the Auction procedures set forth in these Bidding Procedures, all Qualified Bidders, the Office of the United States Trustee for the District of Delaware and the Consultation Parties are permitted to attend the Auction or any Sub-Auction; provided, that the Debtors may, in their sole discretion after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction or specific Sub-Auction. Any Counterparty or

other creditor may attend and observe the Auction by contacting the Debtors, with a copy to the Consultation Parties, no later than one (1) business day prior to the start of the Auction.

Each Qualified Bidder participating in the Auction or specific Sub-Auction will be required to confirm in writing and on the record at the Auction or Sub-Auction, as applicable, that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction or specific Sub-Auction is a binding, good-faith and bona fide offer to purchase the Assets identified in such bids.

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful Bidder and/or Backup Bidder) shall be deemed to have: (i) consented to the core jurisdiction of the Court to enter any order related to these Bidding Procedures, the Auction, or any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to these Bidding Procedures, the Auction or specific Sub-Auction, the construction or enforcement of any agreement or any other document relating to any Sale Transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

## B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their business judgment after consultation with the Consultation Parties:

1.    Baseline Bids. Prior to the commencement of the Auction, the Debtors will determine, in their business judgment, the highest and/or best Qualified Bid (each such Qualified Bid, a "Baseline Bid"). Bidding at the Auction shall commence at the amount of the Baseline Bid.

2.    Sub-Auctions. The Debtors reserve the right to host Sub-Auctions for certain packages of Assets at their discretion (each such package an "Auction Package").

3.    Minimum Overbid. Bidding at the Auction will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "Subsequent Bid") is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid and (ii) the Debtors determine, in consultation with the Consultation Parties, is (A) for the first round, a higher or otherwise better offer than the Baseline Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined herein).

At the Auction, Qualified Bidders may submit successive bids in increments of at least $100,000 greater than the prior bid (each, such Bid, a "Minimum Overbid"). In the event the Debtors designate a Stalking Horse Bid in accordance with the Stalking Horse Procedures, the initial overbid for the assets subject to the applicable Stalking Horse Agreement must be in an amount no less than the Stalking Horse Bid plus the Minimum Overbid plus the Break-up Fee. The Debtors may, in their discretion and in consultation with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

Upon a Qualified Bidder's declaration of a Bid at the Auction, the Qualified Bidder must state on the record its commitment to pay within two (2) business days following the Auction, if such Bid were to be selected as the Successful Bid or as the Backup Bid, the incremental amount of the Qualified Bidder's Good Faith Deposit calculated based on the increased purchase price of such Bid (such Good Faith Deposit so increased, the "Incremental Deposit Amount") if applicable. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any Bid subsequent to a Baseline Bid, the Debtors will in consultation with the Consultation Parties, at each round of bidding, consider and/or give effect to, among other things, (a) any additional liabilities to be assumed by a Qualified Bidder under the Bid, including whether such liabilities are secured or unsecured, (b) any additional costs that may be imposed on the Debtors, and (c) the provision of any wind-down expenses, treatment of the obligations owed to the Prepetition Lenders and DIP Lender, and any additional outstanding debt, as applicable.

4.   Leading Bid. After the first round of bidding and between each subsequent round of bidding, the Debtors (in consultation with the Consultation Parties) will announce the bid that they believe to be the highest or otherwise best offer (each such bid, a "Leading Bid") and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the material terms of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures to the extent permitted hereby.

The Auction or any Sub-Auction will be conducted by open bidding in the presence of all other Qualified Bidders and each Qualified Bidder shall have the right to be present for all rounds of open bidding and to submit additional Bids and make modifications to its Proposed Asset Purchase Agreement at the Auction to improve its Bid. However, to remain eligible to participate in subsequent rounds of bidding, each Qualified Bidder except the bidder that submitted the Leading Bid in the immediately prior round must submit a qualifying Subsequent Bid with respect to such round of bidding.  If a Qualified Bidder that did not submit the Leading Bid in the immediately prior round fails to submit a qualifying Subsequent Bid, then such Qualified Bidder shall be disqualified from continuing to participate in the Auction with respect to those Assets.  The Debtors may, in their business judgment, engage in discussions and negotiate with any and all Qualified Bidders participating

in the Auction or Sub-Auction outside the presence of other bidders before each round of bidding, including to improve or clarify the terms of Bids made.

The Debtors shall have the right to determine (in consultation with the Consultation Parties) which Bid is the highest or otherwise best Bid and, in accordance with the terms of these Bidding Procedures, reject, at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates.

The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) shall take into account any factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, which may include, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; (h) the impact on employees, including the number of employees proposed to be transferred (to the extent such factor shall not negatively impact creditors) and employee-related obligations to be assumed, and (i) the impact on general unsecured creditors including trade creditors, landlords, and judgment creditors (collectively, the "Bid Assessment Criteria").

## C.    **Auction Results**

1.    Successful Bids. Immediately prior to the conclusion of the Auction, the Debtors will, in consultation with the Consultation Parties, (a) determine, consistent with these Bidding Procedures, which Qualified Bid constitutes the highest or otherwise best Bid(s) (each such Bid, a "Successful Bid") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid (each such bidder, a "Successful Bidder") and the amount of the purchase price and other material terms of the Successful Bid. As a condition to remaining the Successful Bidder, the Successful Bidder shall, within two (2) business days after the conclusion of the Auction, (i) if applicable, wire to the Debtors in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Successful Bid(s) and (ii) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid(s).

2.    Backup Bids. Immediately prior to the conclusion of the Auction, the Debtors will, in consultation with the Consultation Parties, (a) determine, in a manner consistent with these Bidding Procedures, which Qualified Bid is the Backup Bid and (b) notify all Qualified Bidders at the Auction of the identity of the Backup Bidder and

the amount of the purchase price and other material terms of the Backup Bid. Within two (2) business days after the Auction, the Backup Bidder shall submit to the Debtors execution versions of the documentation memorializing the terms of the Backup Bid(s).

A Backup Bid will remain binding on the applicable Backup Bidder until the Backup Bid Expiration Date. If the Sale Transaction with the applicable Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction; provided, that the Debtors (i) may, in their business judgment and after providing notice to the Sale Notice Parties, elect not to pursue the Sale Transaction contemplated by the Backup Bid, or (ii) file with the Court a notice of election to proceed to close a Sale Transaction with the Backup Bidder, and request a virtual status conference within three (3) business days where an expedited objection, briefing and hearing schedule will be set.

3.  <u>Notice of Auction Results</u>. By September 28, 2024 at 12:00 p.m. (prevailing Eastern Time), the Debtors will file with the Court and cause to be published on the Claims Agent Website, a notice setting forth the results of the Auction or any Sub-Auction (the "<u>Notice of Auction Results</u>"), which will (a) identify each Successful Bidder and each Backup Bidder, (b) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, and (c) set forth the Post-Auction Objection Deadline (as defined herein), the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction or any Sub-Auction. The Debtors shall also cause the Notice of Auction Results to be served on the Sale Notice Parties on September 28, 2024 or as soon as reasonably practicable thereafter.

4.  <u>Post-Auction Objection Deadline</u>. Following service of the Notice of Auction Results, parties may file a Post-Auction Objection by September 30, 2024 at 4:00 p.m. (prevailing Eastern time).

5.  <u>Sale Status Conference</u>. If a Successful Bid is not the Stalking Horse Bid, the Sale Hearing will be adjourned to a later date, and the Sale Status Conference will be held on October 1, 2024 at 9:30 a.m. (prevailing Eastern time) and new deadlines set for any objections related to the Successful Bid(s) including with respect to adequate assurance of performance by such Successful Bidder(s). For the avoidance of doubt, all objections to the Cure Costs and Stalking Horse Objections shall be filed by September 12, 2024 at 4:00 p.m. (prevailing Eastern time). Objections to the Stalking Horse Adequate Assurance Information shall be filed by September 20, 2024 at 4:00 p.m. (prevailing Eastern time).

6.  <u>Acceptance of Bid</u>. The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors'

acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### D.    Additional Auction Procedures

The Debtors (in consultation with the Consultation Parties) may announce at the Auction or a specific Sub-Auction additional procedural rules (e.g., among other things, the amount of time to make Subsequent Bids, the amount of the Minimum Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or specific Sub-Auction or otherwise modify these Bidding Procedures; provided, that such rules (i) are not materially inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court; and (ii) are disclosed to each Qualified Bidder during the Auction or Sub-Auction.

For the avoidance of doubt, any Bid for any Assets included in any Auction Package shall be subject to a determination by the Debtors, in their business judgment, in consultation with the Consultation Parties, and in accordance with the other provisions of these Bidding Procedures, that (i) a Bid for substantially all of the Debtors' Assets and/or (ii) a combination of Bids that groups the Assets together differently, is the highest or otherwise best offer for such Assets.

### E.    Disposition of Good Faith Deposit

1.    Prospective Bidders. Within five (5) business days after the Debtors make final determinations as to which Prospective Bidders qualify as Qualified Bidders, a Prospective Bidder's Good Faith Deposit shall be returned to any such Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Debtors. Upon the authorized return of a Prospective Bidder's Good Faith Deposit, the Bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.    Qualified Bidders.

    a.    Forfeiture of Good Faith Deposit. The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures. The Debtors and their estates shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid. In the event that a Qualified Bidder's Good Faith Deposit is deemed forfeited, such Qualified Bidder's Good Faith Deposit shall be released by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice by an authorized officer of the Debtors stating that the applicable Qualified Bidder has breached or

otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

b.    <u>Return of Good Faith Deposit</u>. With the exception of the Good Faith Deposit of Successful Bidders and Backup Bidders and any forfeiture of a Good Faith Deposit as described above, any other Qualified Bidder's Good Faith Deposit shall be returned within five (5) business days after the conclusion of the Auction.

c.    <u>Backup Bidder</u>. Any Backup Bidder's Good Faith Deposit shall be returned within five (5) business days after the occurrence of the Backup Bid Expiration Date.

d.    <u>Successful Bidder</u>. At the closing of a Sale Transaction, the Successful Bidder shall be entitled to a credit against the purchase price for the applicable Assets in the amount of the Successful Bidder's Good Faith Deposit. The Good Faith Deposit of a Successful Bidder shall be forfeited if the Successful Bidder fails to consummate the applicable Sale Transaction because of a breach that entitles the Debtors to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtors and their estates shall be entitled to retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach. In the event that a Successful Bidder's Good Faith Deposit is deemed forfeited, such Good Faith Deposit shall be released by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice by an authorized officer of the Debtors stating that the applicable Successful Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Successful Bid.

## VII.    SALE HEARING

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Bankruptcy Court. The hearing to approve any Sale Transaction (the "<u>Sale Hearing</u>") consummated in accordance with these Bidding Procedures will: (a) if the Stalking Horse Bid is the Successful Bid, take place on October 1, 2024 at 9:30 a.m. (prevailing Eastern Time) or (b) if the Successful Bid is not a Stalking Horse Bid, take place at a later date to be determined at the Sale Status Conference, before the Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware. If a Stalking Horse Bid is the Successful Bid, and to the extent that any timely filed Stalking Horse Objections are not resolved at the hearings to be held on September 19, 2024 or October 1, 2024, such objections shall be heard on October 7, 2024, at _____ _.m.

At the Sale Hearing, the Debtors will seek entry of one or more orders (each, a "<u>Sale Order</u>") approving, among other things, one or more sales of the Assets to the Successful Bidder(s). The Debtors may, in their business judgment and following consultation with the Consultation

Parties, adjourn or reschedule the Sale Hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment or rescheduling at the Auction or in Court on the date of the originally scheduled Sale Hearing.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things: (i) authorizes and approves the Sale Transaction(s) to the Successful Bidder(s) and/or the Backup Bidder(s); and (ii) includes a finding that the Successful Bidder(s) and/or the Backup Bidder(s) is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code..

## VIII.   RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify these Bidding Procedures, including to, among other things: (a) extend or waive deadlines or other terms and conditions set forth herein; (b) adopt new rules and procedures for conducting the bidding and Auction process; or (c) otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets; provided that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or any order of the Court; and (ii) are promptly communicated to each Qualified Bidder.   Subject to any applicable deadlines, the rights of the Consultation Parties to contest any such actions by the Debtors as part of a sale objection or other pleading are fully preserved.

## IX.   NOTICING

### A.   Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties by email (collectively, the "Bid Notice Parties"):

    a.    Counsel for the Debtors: (a) Shulman Bastian Friedman & Bui LLP, by email to afriedman@shulmanbastian.com, mlowe@shulmanbastian.com, and mcasal@shulmanbastian.com; and (b) Raines Feldman Littrell LLP, tfrancella@raineslaw.com;

    b.    Investment banker for the Debtors: Hilco Corporate Finance, LLC, tstratton@hilcocf.com;

    c.    Advisors for the Committee: (a) Lowenstein Sandler LLP, by email to dposner@lowenstein.com and gfinizio@lowenstein.com; (b) Morris James LLP, by email to bkeilson@morrisjames.com and emonzo@morrisjames.com; and (c) Dundon Advisors LLC, by email to ph@dundon.com and lr@dundon.com; and

    d.    Counsel for the DIP Lender (as defined in the Debtors' motion for authority to obtain post-petition financing [Docket No. 14]), provided that the DIP Lender is not presently a bidder in the Auction and has represented in

writing to the Debtors that it shall not thereafter become a bidder in the Auction.

**B.**   **Sale Notice Parties**

The "Sale Notice Parties" shall mean the following persons and entities:

    a.    Counsel to the DIP Lender;

    b.    all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors);

    c.    all non-Debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with a Sale Transaction;

    d.    any governmental authority known to have a claim against the Debtors in these Cases;

    e.    the Office of the United States Trustee;

    f.    the Federal Trade Commission;

    g.    the Bureau of Consumer Protection;

    h.    all applicable federal, state and local taxing authorities, including the Internal Revenue Service;

    i.    the United States Attorney's Office for the District of Delaware;

    j.    United States Attorney General's Office for the District of Delaware;

    k.    the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate;

    l.    the California Department of Alcoholic Beverage Control;

    m.    the Arizona Department of Liquor Licenses and Control;

    n.    counsel for the Committee;

    o.    all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and

    p.    all other parties as directed by the Court.

**C.**   **Sale Notice and Publication Notice**

Within two (2) business days after entry of the Bidding Procedures Order, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Claims Agent

Website a notice (the "Sale Notice") setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures, (B) the date, time and location of the Auction and Sale Hearing, and (C) the Stalking Horse Objection Deadline and Post-Auction Objection Deadline (each as defined herein) and the procedures for filing such objections.

Within five (5) business days after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors will cause the information contained in the Sale Notice to be published once in *The Wall Street Journal* (national edition), *Los Angeles Times*, or a similar regional or national publication (the "Publication Notice").

**D.      Stalking Horse Objections**

Any Stalking Horse Objections shall be filed with the Court and served on the following parties (collectively, the "Objection Notice Parties"), by no later than September 12, 2024, at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline"):

a.      Counsel for the Debtors: (a) Shulman Bastian Friedman & Bui LLP, 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618 (afriedman@shulmanbastian.com, mlowe@shulmanbastian.com, and mcasal@shulmanbastian.com); and (b) Raines Feldman Littrell LLP, (tfrancella@raineslaw.com);

b.      the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jonathan Lipshie, jon.lipshie@usdoj.gov;

c.      Counsel for the Committee: (a) Lowenstein Sandler LLP, by email to dposner@lowenstein.com and gfinizio@lowenstein.com; and (b) Morris James LLP, by email to bkeilson@morrisjames.com and emonzo@morrisjames.com; and

d.      Counsel for the DIP Lender: (a)  Elkins Kalt Weintraub Reuben Gartside LLP, 10345 W Olympic Boulevard, Los Angeles, CA 90064, Attention: Michael I. Gottfried, Esq. mgottfried@elkinskalt.com, Lauren N Gans, lgans@elkinskalt.com; and (b) Richard Riley, RRiley@whitefordlaw.com, and David Gaffey, DGaffey@whitefordlaw.com.

**E.      Notices Regarding Assumption and Assignment of Executory Contracts**

The Debtors will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures (as defined in the Bidding Procedures Order).

## X.      CONSULTATION PARTIES

Throughout the Sale Transaction process, the Debtors and their advisors will consult with the following parties (collectively, the "Consultation Parties"), as provided in these Bidding Procedures, and as is otherwise necessary or appropriate, as determined in the Debtors' business

judgment: (i) the Committee and their legal and financial advisors, and (ii) the DIP Lender and its legal and financial advisors, provided that the DIP Lender is not presently a bidder in the Auction and has represented in writing to the Debtors that it shall not thereafter become a bidder in the Auction..

Notwithstanding the foregoing, the Debtors will not consult with or provide copies of any Bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtors if such party is an active or prospective bidder for the relevant Asset(s) at the applicable time. If, however, a member of the Committee submits a Qualified Bid for any of the Assets, the Committee will maintain its consultation rights as a Consultation Party, provided, that the Committee excludes the bidding Committee member from any discussions or deliberations regarding a transaction involving the relevant Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the Sale Transaction process to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtors' discretion and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment, nor shall any consultation rights waive, impair, or limit any rights of any of the Consultation Parties, including, without limitation, the right to oppose any relief sought by the Debtors pursuant to or under the Bidding Procedures or the Bidding Procedures Order.  All rights of the Consultation Parties with respect to any proposed Sale Transaction(s) are fully reserved.

## XI.    FIDUCIARY OUT

Nothing in these Bidding Procedures shall require the Debtors to take any action, or to refrain from taking any action to the extent the Debtors determine that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.