**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ONE TABLE RESTAURANT BRANDS, LLC, *et al.*,[1] | Case No. 24-11553 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Hearing Date: July 17, 2025 at 10:30 a.m. (ET)** |
| | **Objection Deadline: July 10, 2025 at 4:00 p.m. (ET)** |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ORDERS**
**(I) ESTABLISHING DISMISSAL PROCEDURES, (II) AUTHORIZING DISMISSAL**
**OF THE DEBTORS' CHAPTER 11 CASES, (III) APPROVING FINAL FEES AND**
**EXPENSES OF PROFESSIONALS, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), by their

undersigned counsel, respectfully move (the "Motion") this Court for entry of orders, substantially

in the forms attached hereto (collectively, the "Proposed Orders"): (a) approving certain

procedures related to dismissal of the Debtors' chapter 11 cases (the "Cases"); (b) dismissing the

Cases after such procedures are completed; (c) approving final fees and expenses of estate

professionals; and (d) granting such other and further relief as is just and proper. In support of the

Motion, the Debtors respectfully submit as follows, which will be supported by the Declaration of

Huntley Castner attached as **Exhibit A** hereto.

---

[1] The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: (1) One Table Restaurant Brands, LLC, a Delaware limited liability company (9853); (2) One Table Restaurant Operations, LLC, a Delaware limited liability company (7280), (3) Tender Greens OpCo, LLC, a Delaware limited liability company (7827); (4) Tocaya Holdings LLC, a Nevada limited liability company (8815); (5) Tocaya Organica, LLC, a California limited liability company (6720); (6) Tocaya Management, LLC, a Nevada limited liability company (6789); (7) BLT Steak LA LLC, a California limited liability company (4688); (8) Tocaya Venice LLC, a California limited liability company (0159); (9) Tocaya South Bay LLC, a California limited liability company (0401); (10) Tocaya Toluca LLC, a California limited liability company; and (11) Tocaya Santa Monica LLC, a California limited liability company (8134). The Debtors' mailing address is: 1201 W. 5th Street, Suite T-310, Los Angeles, CA 90017.

10553908.1

**PRELIMINARY STATEMENT**

1.      The Debtors filed these Cases to effectuate a going concern sale of substantially all of their assets.

2.      On October 9, 2024, the Court entered the *Order (A) Authorizing the Sale of Substantially All Of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement(s), Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases, and (C) Granting Other Related Relief* [D.I. 369] (the "Sale Order") and on October 24, 2024, the Court entered the *Supplemental Order (A) Authorizing the Sale of Substantially All Of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement(s), Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases, and (C) Granting Other Related Relief* [D.I. 397] (the "Supplemental Sale Order" and collectively with the Sale Order, the "Sale Orders").

3.      Prior to entry of the Sale Orders, the Debtors, the Official Committee of Unsecured Creditors (the "Committee") appointed in the Cases, the DIP Lender, the Prepetition Lenders and the Purchaser (all defined below) reached the Global Resolution (defined below). The Global Resolution provided for, *inter alia*, $700,000 for the payment of the Committee professionals' allowed fees and expenses and a recovery to holders of allowed unsecured claims (the "Committee Fund").

4.      On October 7, 2024, the Court entered an *Order Pursuant to 11 U.S.C. §105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlement* [D.I. 357] (the "Settlement Order") approving the Global Resolution.

2

5.      The sale closed on October 29, 2024.  *See*, D.I. 424.

6.      The Debtors have explored various options to bring these Cases to a conclusion and concluded that dismissal is the most expeditious and cost-effective mechanism to wind down the Debtors' bankruptcy estates (the "Estates").

7.      Without the Global Settlement and proposed dismissal, there likely would be no distribution available for unsecured creditors, as the Estates have no further assets to administer or monetize (avoidance actions were sold as part of the sale and Global Resolution, with a covenant not to pursue).  For these reasons, the Debtors believe that a dismissal, rather than conversion, would result in the greatest and most expeditious distribution to unsecured creditors in accordance with the procedures (the "Dismissal Procedures") discussed in further detail below.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Debtors confirm their consent pursuant to Local Rule 9013-l(f) to the entry of final orders by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      The statutory predicates for the relief requested herein are sections 105(a), 305, 349, and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 2002, and Local Rule 1017-2.

10553908.1

**BACKGROUND**

**General Background**

10.     On July 17, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Cases.

11.     On August 2, 2024, the Office of the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  No trustee or examiner has been appointed in these Cases.

12.     Prior to the Petition Date and the sale described below, the Debtors operated two restaurant brands - Tender Greens and Tocaya Modern Mexican which collectively had thirty-nine (39) restaurants throughout California and Arizona on the Petition Date.

**DIP Financing**

13.     On July 18, 2024, the Debtors filed the *Motion of the Debtors Pursuant to Sections 105, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming and Other Liens and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [D.I. 14] (the "DIP Motion").

14.     Among other things, the DIP Motion sought orders authorizing the Debtors to obtain postpetition financing from Breakwater Management LP in its capacity as lender (together with its affiliates, the "DIP Lender"), who acts as the administrative agent and collateral agent for Breakwater Credit Opportunities Fund II LP, H&W Irrevocable Trust, Randall Capital Group, LLC, 2014 MSM Irrevocable Trust, and Schuyler and Dina Joyner Revocable Trust Dated

4

11/12/2003 (collectively, the "Prepetition Lenders"). Subject to the Final DIP Order, the DIP

Motion sought, among other things, to establish October 2, 2024 as the deadline for a party with

standing, other than the Debtors, to seek to seek to avoid, object to, or otherwise challenge certain

stipulations made by the Debtors as to among other things, the validity, enforceability, extent,

priority, or perfection of the mortgages, security interests, and liens of the Prepetition Lenders.

15.      On July 19, 2024, the Court entered the *Interim Order (I) Authorizing Debtors to*

*Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming and Other Liens*

*and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic Stay; and (IV)*

*Granting Related Relief* [D.I. 64] (the "First Interim DIP Order"). Pursuant to the First Interim

DIP Order, the final hearing on the DIP Motion ("Final DIP Hearing") was set for August 13,

2024.

16.      In order to preserve its objections to the final order on the DIP Motion, on August

9, 2024, the Committee filed a reservation of rights [D.I. 92].

17.      Pursuant to the Debtors' request, the Court held a further interim hearing on the

DIP Motion on August 13, 2024.

18.      On August 14, 2024, the Court entered the *Second Interim Order (I) Authorizing*

*Debtors to Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming and*

*Other Liens and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic*

*Stay; and (IV) Granting Related Relief* [D.I. 130] (the "Second Interim DIP Order"). Pursuant to

the Second Interim DIP Order, the Final DIP Hearing was continued to September 4, 2024.

19.      On September 3, 2024, the DIP Motion was granted on a third interim basis and

the Court entered the *Third Interim Order (I) Authorizing Debtors to Obtain Postpetition*

10553908.1

*Financing and Use Cash Collateral; (II) Granting Priming and Other Liens and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [D.I. 235] (the "Third Interim DIP Order"). Pursuant to the Third Interim DIP Order, the Final DIP Hearing was continued to September 19, 2024 to coincide with the hearing on any objections to the stalking horse bid.

20.     On September 20, 2024, the DIP Motion was granted on a final basis and the Court entered the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming and Other Liens and Super-Priority Claims and Adequate Protection; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [D.I. 319] (the "Final DIP Order").

### Sale of the Debtors' Assets and Global Settlement

21.     On August 9, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders: (I) (A) Approving Bidding Procedures and Protections in Connection With a Sale of Substantially All of Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances and Interests; (B) Authorizing the Debtors to Designate a Stalking Horse Bid; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form And Manner of Notice Thereof; and (E) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Leases; (II) (A) Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Successful Bidder(s)' Asset Purchase Agreement(s), Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases; and (III) Granting Related Relief* [D.I. 124] (the "Sale Motion").

22.     On August 22, 2024, the Court entered the *Order: (I) (A) Approving Bidding*

*Procedures and Protections in Connection With a Sale of Substantially All of Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances and Interests; (B) Authorizing the Debtors to Designate a Stalking Horse Bid; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form And Manner of Notice Thereof; and (E) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Leases* [D.I. 178] (the "Bidding Procedures Order").

23.     In accordance with the terms of the Bidding Procedures Order, on August 23, 2024, the Debtors filed the Stalking Horse Notice [D.I. 182] and on September 5, 2024, the Amendment to Stalking Horse Notice [D.I. 252] (collectively, the "Stalking Horse Notice"). Pursuant to the Stalking Horse Notice, the Debtors sought to designate an affiliate of the DIP Lender - OTRB Corporate, LLC (the "Purchaser") - as the stalking horse bidder for the Debtors' assets.

24.     On September 20, 2024, the Court approved the designation of the Purchaser as the stalking horse bidder [D.I. 320] (the "Stalking Horse Order"). The Stalking Horse Order included a revised form of the asset purchase agreement (the "APA").

25.     On September 26, 2024, the Debtors filed the *Debtors' Motion for Order Pursuant to 11 U.S.C.§ 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlement* [D.I. 327] (the "Settlement Motion") which sought approval of the global resolution (the "Global Resolution") by and between the Debtors, the DIP Lender, the Prepetition Lender, and the Committee concerning the DIP Motion, the Sale Motion, and the Stalking Horse Notice. The Global Resolution resolved the Committee's allegations that it had a basis to assert certain causes of action against the Prepetition Lenders and the DIP Lender as to the validity, enforceability, extent, priority, or perfection of their mortgages, security interests, and liens, as well as its concerns

10553908.1

that if the Stalking Horse Bidder were to be the winning bidder for the sale of the Debtors' assets, the Stalking Horse Bid would leave the Estates administratively insolvent and not provide for any recovery for unsecured creditors.

26.    On October 7, 2024, the Court entered the Settlement Order.

27.    As part of the Global Resolution, the DIP Lender agreed to keep the Estates administratively solvent until a plan was confirmed or the Cases were dismissed, subject to certain limitations.  Moreover, the Global Resolution resulted in an additional $500,000 (on top of the $200,000 already allocated to the Committee in the DIP budget) being made available for the payment of the Committee professionals' fees and expenses and to effectuate a distribution to unsecured creditors (after accounting for costs related to reconciling unsecured claims).  As part of the Global Resolution, the Committee Professionals explicitly agreed to limit their fees and costs such that they do not exceed the Committee Fund.  *See* Settlement Order [D.I. 357] at Paragraph 2.c.i.

28.    On October 9 and October 24, 2024, the Court entered the Sale Orders.

29.    The Sale Orders authorized, among other things, the Debtors and the Purchaser to close and otherwise consummate the sale of substantially all of the Debtors' assets to the Purchaser (the "Closing").

30.    The Closing occurred effective as of October 29, 2024. Accordingly, on October 31, 2024, the Debtors filed a Notice of Closing of the Sale [D.I. 424].

**Bar Dates**

31.    On September 27, 2024, pursuant to the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [D.I. 334], the Court set

the following deadlines for the filing of claims: general bar date of July 17, 2024 and governmental bar date of January 13, 2025.

32.    On December 11, 2024, pursuant to the *Order (I) Establishing Administrative Claims Bar Date, and (II) Approving Form and Notice Thereof* [D.I. 486], the Court set the last day to file administrative claims as January 15, 2025.  All of the bar dates discussed in Paragraphs 31 and 32 herein will be collectively referred to as the "Bar Dates" and the Orders discussed in such paragraphs will be collectively referred to as the "Bar Date Orders."

**D.    Dismissal Procedures**

33.    The Debtors, the Committee and the Purchaser have agreed to exit the Cases through a dismissal in accordance with the Dismissal Procedures set forth in the proposed order attached hereto as **Exhibit C** (the "Procedures Order").

34.    In summary, the Procedures Order will provide for: (1) procedures for administration of the Committee Fund; (2) payment of allowed professional fees; and (3) a mechanism for dismissal of the Cases.

35.    The Debtors believe that a dismissal is appropriate here because: (1) all assets of the Estates have been sold or monetized, (2) all administrative claims, other than final fees and expenses, have been paid or will be paid by the time of the hearing on the Motion, (3) subject to pending claim objections listed on **Exhibit B** (the "Disputed Priority Claims"), the Debtors will pay all remaining undisputed priority claims, which are also listed on **Exhibit B** (the "Undisputed Priority Claims"), after entry of the Procedures Order, and (4) the Committee Fund will be used to, among other things, pay allowed general unsecured claims *pro rata*, with the Committee having the right to appoint a claims administrator (the "Administrator") to reconcile claims and effectuate

10553908.1

distributions to unsecured creditors.   Pursuant to the Settlement Order, any fees of the Administrator shall be paid from the Committee Fund.   *See*, Settlement Order [D.I. 357] at Paragraph 2.c.vi.

36.   As set forth below, requiring the Debtors to prosecute a plan of liquidation or convert the Cases to chapter 7 will only increase fees and expenses, which would further diminish the funds available for distribution to the Debtors' unsecured creditors.

37.   The Dismissal Procedures also provide that professionals seeking final approval and payment of fees and/or expenses shall (1) file an application for approval of final fees and expenses (the "Final Fee Application") by no later than June 26, 2025 to be heard concurrently with the Motion, covering fees and expenses incurred through the date of filing of the Final Fee Application; and (2) if necessary, file a supplement to the Final Fee Application (the "Supplemental Fee Application") by no later than 4:00 p.m. Eastern time on the date that is two (2) business days prior to the hearing on this Motion covering fees and expenses incurred from the date of filing the Final Fee Application to the date of filing the Supplemental Fee Application plus any fees and expenses that are expected to be incurred from the date of filing the Supplemental Fee Application to the date of dismissal of the Cases.

38.   The Dismissal Procedures also require the Debtors to file a certification of counsel stating that the conditions precedent to dismissal have been met and requesting that the Court dismiss these Cases and enter the proposed order attached hereto as **Exhibit D** (the "Dismissal Order").   Specifically, the following conditions shall be required to be satisfied prior to entry of the Dismissal Order: (i) payment of all allowed administrative expenses, including payment of all approved fees and expenses of estate professionals, but in no event more than the total of the

10553908.1

Committee Fund of $700,000 to cover fees and expenses of the Committee Professionals; (ii) final

adjudication of the objections to the Disputed Priority Claims;[2] (iii) payment of all Undisputed

Priority Claims; (iv) the filing of all monthly operating reports; and (v) payment of final US Trustee

fees (collectively, the "Dismissal Conditions").

**RELIEF REQUESTED**

39.     By this Motion, the Debtors respectfully request entry of orders: (i) establishing the

Dismissal Procedures for dismissal of the Cases, (ii) dismissing the Cases upon satisfaction of the

Dismissal Procedures and related Dismissal Conditions, (iii) approving the payment of final fees

and expenses of estate professionals, and (iv) granting related relief.

**BASIS FOR RELIEF REQUESTED**

**A.      Cause Exists Under Section 1112(b) of the Bankruptcy Code to Dismiss These Cases.**

40.     Section 1112(b) provides that "on request of a party in interest, and after notice and

a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a

case under this chapter, whichever is in the best interests of the creditors and the estate, for cause

unless the court determines that the appointment under section 1104(a) of a trustee or an examiner

is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1).

41.     Dismissal under "[s]ection 1112(b) requires a two-step process in which the court

first determines whether there is 'cause' to convert or dismiss, and next chooses between

conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re Am. Capital*

---

[2] For the avoidance of doubt, to the extent any of the Disputed Priority Claims results in an allowed priority
or administrative claim, such allowed claim will need to be paid as part of the Dismissal Conditions.

11

*Equip., LLC*, 688 F.3d 145, 161 (3d. Cir. 2012) (citations omitted).

42.     Section 1112(b)(4) sets forth various grounds for finding cause, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

43.     That said, the list set forth in section 1112(b)(4) is not exhaustive and the Court may consider whether other factors and circumstances qualify as cause. *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 160 (3d. Cir. 1999).

44.     Cause exists for dismissal where "prolonging" a case "will only burden the estate with mounting attorney and administrative fees." *Am. Capital Equipment*, 688 F.3d at 163.

45.     Here, cause exists to dismiss the Cases. The Debtors are no longer conducting any business, they have no remaining assets that could be used to satisfy the claims of any creditors other than the Committee Fund, and therefore, they have no reasonable likelihood of rehabilitation. Consequently, absent dismissal, the Debtors will continue to incur administrative expenses with no source to pay such expenses.  The Debtors respectfully submit that the Court should dismiss the Cases because "cause" exists to do so under section 1112(b)(1).

### D.     Dismissal is in the Best Interest of the Debtors' Creditors and the Estates.

46.     Once a court determines that cause exists to dismiss or convert a case, the court must then evaluate whether dismissal or conversion is in the best interest of the creditors and the estate. *Am. Capital Equipment*, 688 F.3d at 163.  The Debtors submit that it is in the best interest of their creditors and the Estates to dismiss the Cases rather than convert them to chapter 7.

47.     First, dismissal is in the best interest of creditors where a debtor has nothing to reorganize. *See*, *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing a

chapter 11 proceeding where there was "simply nothing to reorganize" and "no reason to continue the reorganization"). As set forth above, the Debtors are no longer operating or have anything to reorganize because the Debtors have sold all of their assets.

48.    Second, dismissal is in the best interest of the Debtors' creditors and the Estates because dismissal maximizes the available distribution for the Debtors' unsecured creditors. Pursuant to the Global Resolution, the Committee Fund will be used to, among other things, effectuate a distribution to unsecured creditors. If the Cases were instead converted, such proceeds would be diminished by the fees and expenses arising under a chapter 7 case.

49.    Third, dismissal, rather than conversion, is in the best interest of the Debtors' creditors and the Estates because dismissal provides for a more timely exit from the Cases and, as a result, a distribution for unsecured creditors. Rather than incur the delay associated with a conversion, the Dismissal Procedures provide for an organized and efficient exit from the Cases that has the support of all the relevant parties in interest.

50.    Finally, dismissal is in the best interest of the Estates and their creditors because conversion to chapter 7 and the appointment of a trustee would impose additional administrative costs upon the Estates at a time when the Debtors are no longer conducting any business or have any additional assets.

51.    For the foregoing reasons, the Debtors submit that it is in the best interest of the Estates and all stakeholders to dismiss the Cases in accordance with this Motion.

**F.    The Dismissal Procedures are Appropriate.**

52.    In connection with the wind down of the Estates and dismissal of the Cases, the Debtors seek approval of the Dismissal Procedures in the form of the Procedures Order.

10553908.1

53.     Specifically, the Debtors propose that the Cases be dismissed in accordance with

the following Dismissal Procedures:[3]

    (a)    Each professional retained in these Cases pursuant to an Order of the Court (the "Retained Professional(s)") may file a Final Fee Application no later than June 26, 2025 (the "Final Fee Application Deadline") for: requested compensation for professional services and reimbursement of expenses incurred that have not already been paid through separate fee application through the date of filing the Final Fee Application.  If necessary, by 4:00 p.m. (prevailing Eastern Time) on the date that is two (2) business days prior to the hearing on this Motion, the Retained Professional may file a Supplemental Fee Application for requested fees and expenses incurred from the date of filing the Final Fee Application to the date of filing of the Supplemental Fee Application plus compensation and reimbursement requested for estimated professional fees and expenses that are expected to be incurred between the date of filing the Supplemental Fee Application and the anticipated dismissal date.  Final Fee Applications will be heard concurrently with this Motion.

    (b)    As soon as practicable after satisfaction of all Dismissal Conditions, the Debtors shall file a certification of counsel (the "Certification") requesting entry of the Dismissal Order. Among other things, the Certification will verify that, to the extent not already paid, all administrative expenses of the Estates have been paid in full, that all allowed priority unsecured claims as listed in **Exhibit B** hereto have been paid, and that all objections to priority unsecured claims have been granted or otherwise resolved in accordance with the Dismissal Procedures.  In addition, the Certification shall provide that all monthly operating reports have been filed, and all US Trustee fees have been paid.

    (c)    The Cases will immediately be dismissed upon entry of the Dismissal Order. The Debtors shall serve the Dismissal Order on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney's Office for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel to the Committee; (v) counsel for the Purchaser; (vi) any party that requests service pursuant to Bankruptcy

---

[3]     The following is a summary of the terms of the Procedures Order.  In the event and to the extent of any inconsistency between the Procedures Order and the summary herein, the terms of the Procedures Order shall control.

10553908.1

Rule 2002; and (vii) any holder of a Claim that (a) is either (x) listed in the Debtors' Schedules' as neither contingent, unliquidated, not disputed or (y) the subject of a timely filed proof of claim, and (b) which has not been disallowed by separate order of the Court.

(d)    The Administrator shall be fully responsible for the administration of the Committee Fund, including reconciling unsecured claims and effectuating distributions to unsecured creditors.

54.    The Court has authority to approve the Dismissal Procedures pursuant to section 105, which provides, in relevant part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The Court also has authority to approve the Dismissal Procedures pursuant to section 349(b), which permits the court to alter the effect of dismissal for cause shown.

55.    The Debtors submit that the Dismissal Procedures are in the best interest of the Estates and that cause exists to alter the effect of dismissal pursuant to section 349(b). The Dismissal Procedures state the milestones that must be met prior to dismissal of the Cases, explain the mechanism for dismissal, and promote the orderly wind down of the Estates.

**G.    The Dismissal and Dismissal Procedures Do Not Violate the Bankruptcy Code's Priority Scheme.**

56.    The proposed dismissal of the Cases and distribution of the Committee Fund comply with applicable law governing distributions of estate property.

57.    A final disposition "in connection with the dismissal of a Chapter 11 case cannot, without consent of the affected parties, deviate from the basic priority rules" of the Bankruptcy Code. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017).

58.    Here, neither the Procedures Order nor the Dismissal Order provide for a distribution in violation of the priority scheme. Subject to pending objections, there are a small

10553908.1

amount of priority unsecured claims that will be paid after entry of the Procedures Order.  With all allowed administrative and priority claims having been paid, the Committee Fund will be used to, among other things, pay allowed general unsecured claims pro rata. Consequently, the distribution of the Committee Fund to pay unsecured creditors of the Estates does not violate the priority scheme of the Bankruptcy Code.

**H.      All Rulings, Orders and Judgments Entered in the Cases Should Remain Binding and Have Full Force and Effect.**

59.      Section 349 provides that dismissal of a case vacates any order, judgment or transfer ordered in the case. 11 U.S.C. § 349(b)(2).  However, a bankruptcy court may "for cause" order otherwise. 11 U.S.C. § 349(b).

60.      Courts in this jurisdiction have regularly maintained the enforceability of orders, including those approving releases and settlements, after a dismissal. *See, e.g.*, *In re Sunco Liquidation, Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [D.I. 865] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [D.I. 381] (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.*, Case No. 16- 11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [D.I. 408] (giving orders, releases, and injunctions continuing effect).

61.      The Debtors submit that cause exists to allow all orders, rulings and judgments entered by the Court during these Cases to remain in full force, notwithstanding the dismissal of the Cases. Here, numerous parties in interest have relied upon orders entered by the Court in connection with the Cases. For example, the Sale Orders approved the sale of substantially all of

the Debtors' assets, contained specific language requested by various parties in interest, and has been relied upon by the Debtors, the Committee, the DIP Lender, the Purchaser, and all parties. Similarly, the finality of the releases, stipulations, and protections contained in the Final DIP Order were necessary to induce the DIP Lender to extend postpetition financing and for the Committee to abstain from objecting to the DIP Motion. Likewise, the Settlement Order provide releases, stipulations and protections that were necessary to induce the Committee to not object to the sale. Finally, the Bar Dates and deadlines to file claims must be ratified and continue in effect despite dismissal.

62.     Consequently, the Debtors submit that cause exists to allow all prior orders, rulings, deadlines and judgments entered by the Court in these Cases to be given continued effect, notwithstanding dismissal.

## **NOTICE**

Notice of this Motion has been given to: (i) the United States Trustee for the District of Delaware; (ii) counsel for the Purchaser; (iii) counsel to the Committee; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (v) any holder of a claim that (a) is either (x) listed in the Debtors' schedules of assets and liabilities as neither contingent, unliquidated, not disputed or (y) the subject of a timely filed proof of claim, and (b) which has not been disallowed by separate order of the Court.

10553908.1

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that the Court enter the Proposed Orders,

substantially in the forms attached to this Motion as **Exhibit C** and **Exhibit D** and grant such other

and further relief as is just and proper.

Dated: June 20, 2025                                  **RAINES FELDMAN LITTRELL LLP**
     Wilmington, Delaware

*/s/ Thomas J. Francella, Jr.*
Thomas J. Francella Jr. (No. 3855)
824 N. Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
Email: tfrancella@raineslaw.com

     and

**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
Alan J. Friedman (admitted *pro hac vice*)
Melissa Davis Lowe (admitted *pro hac vice*)
Max Casal (admitted *pro hac vice*)
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000
E-mail: friedman@shulmanbastian.com
mlowe@shulmanbastian.com
mcasal@shulmanbastian.com

*Counsel to the Debtors and Debtors in Possession*

10553908.1