**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| ONE TABLE RESTAURANT BRANDS, LLC, *et al.*,[1] | Case No. 24-11553 (KBO) |
| | (Jointly Administered) |
| Debtors. | **UST Objection Deadline: July 14, 2025, at 4:00 p.m. (ET)**<br>**Hearing Date: July 17, 2025, at 10:30 a.m. (ET)**<br>**Ref. D.I. 669** |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ORDERS (I) ESTABLISHING DISMISSAL PROCEDURES, (II) AUTHORIZING DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES, (III) APPROVING FINAL FEES AND EXPENSES OF PROFESSIONALS, AND (IV) GRANTING RELATED RELIEF**

In support of the United States Trustee's objection ("Objection") to *Motion of the Debtors and Debtors-In-Possession for Orders (I) Establishing Dismissal Procedures, (II) Authorizing Dismissal of the Debtors' Chapter 11 Cases, (III) Approving Final Fees and Expenses of Professionals, and (IV) Granting Related Relief* [D.I. 669] (the "Structured Dismissal Motion"), Andrew R. Vara, United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by undersigned counsel, avers:

## INTRODUCTION

1. Through the Structured Dismissal Motion, the Debtors seek substantially the same relief as is available through the chapter 11 plan solicitation, but without including the

[1] The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: (1) One Table Restaurant Brands, LLC, a Delaware limited liability company (9853); (2) One Table Restaurant Operations, LLC, a Delaware limited liability company (7280), (3) Tender Greens OpCo, LLC, a Delaware limited liability company (7827); (4) Tocaya Holdings LLC, a Nevada limited liability company (8815); (5) Tocaya Organica, LLC, a California limited liability company (6720); (6) Tocaya Management, LLC, a Nevada limited liability company (6789); (7) BLT Steak LA LLC, a California limited liability company (4688); (8) Tocaya Venice LLC, a California limited liability company (0159); (9) Tocaya South Bay LLC, a California limited liability company (0401); (10) Tocaya Toluca LLC, a California limited liability company; and (11) Tocaya Santa Monica LLC, a California limited liability company (8134). The Debtors' mailing address is: 1201 W. 5th Street, Suite T-310, Los Angeles, CA 90017.

protections afforded by that process. First, it is not clear that the Debtors are following the Bankruptcy Code's distribution scheme through the Structured Dismissal Motion. Second, creditors are not provided with the right to vote on any plan, and adequate disclosure is not provided; the Debtors propose to serve only a brief notice of the motion on the creditors. The Debtors propose that general unsecured creditors will be paid through an unidentified Administrator whose duties and responsibilities are not disclosed and, furthermore, who will be beyond this Court's oversight and jurisdiction once the cases are dismissed. Third, there are no safeguards that creditors will be treated equitably. The alleged cost savings appear to be minimal, if any, and do not justify ignoring the Bankruptcy Code's requirements. The distribution mechanism proposed by the Debtors falls outside what is envisioned by the Bankruptcy Code. Distributions to creditors should occur either through a plan voted on by creditors that satisfies Section 1129 or through chapter 7 where the trustee is bonded, accountable to the Bankruptcy Code, and subject to applicable oversight. Accordingly, the Structured Dismissal Motion should be denied, and the cases should be converted to chapter 7 cases.

## JURISDICTION

2. This Court has jurisdiction to hear the Structured Dismissal Motion and this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to title 11 of the United States Bankruptcy Code. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S.

Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. In furtherance of his case supervisory responsibilities, as well as pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on the Structured Dismissal Motion.

**BACKGROUND**

5. The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on July 17, 2024.

6. The U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") on August 2, 2024.

7. On August 9, 2024, the Debtors filed a motion seeking to sell substantially all their operating assets [D.I. 124]. On August 22, 2025, the Court entered the order approving bidding procedures, and an order approving the sale was entered on October 9, 2024. [D.I. 178]. On October 29, 2025, the Debtors closed on the sale. [D.I. 424], Structured Dismissal Mot. ¶ 29.

8. On September 26, 2024, the Debtors filed a Settlement Motion, which provided, *inter alia*, a fund to be distributed to unsecured creditors. [D.I. 327]. The settlement was approved on October 7, 2024. Structured Dismissal Mot. ¶ 26.

9. The unsecured claims bar date was July 17, 2024, and the governmental bar date was January 13, 2025. Structured Dismissal Mot. ¶ 31. In addition, the bar date for filing administrative expense claims was January 15, 2025. Structured Dismissal Mot. ¶ 32. The Debtors' representative asserts: "Other than final professional fees, I am not aware of any other administrative claims made against the Debtors." Castner Decl. [D.I. 669-1] ¶ 8. Further, he

states: "The Undisputed Priority Claims…will be paid after the entry of the Procedures Order." Castner Decl. ¶ 9.

10. Through the Structured Dismissal Motion, the Debtors seek the entry of two orders: (1) an order conditionally approving the dismissal, the purpose of which appears to be the approval of the procedures for dismissal and providing for conditions thereto; and (2) the actual dismissal order.

## ARGUMENT

### A. The Dismissal Violates The Priority Distribution Rules

11. "Chapter 11 foresees three possible outcomes." *Czyzewski v. Jevic Holding Corp*., 137 S. Ct. 973, 979 (2017). These outcomes are:

(1) a "bankruptcy-court-confirmed plan;"

(2) conversion to a chapter 7 liquidation case; or

(3) dismissal of the chapter 11 case under 11 U.S.C. § 1112. *Id.*

12. Thus, if a bankruptcy estate lacks sufficient funds to pay administrative expense claims and priority creditors in full, as required by 11 U.S.C. § 1129(a), and the priority creditors do not consent to less favorable treatment, the debtor's case must be converted or dismissed. Both dispositions respect the relative rights of creditors under federal bankruptcy and state law. The rights of priority creditors are protected in chapter 7 by the requirement that priority creditors be paid first, and in the order specified in section 507. 11 U.S.C. § 726(a). Non-priority general unsecured claims are paid pro rata after all claimholders with higher priorities have been fully paid. 11 U.S.C. § 726(b).

13. In the alternative, a chapter 11 case may be dismissed, leaving creditors free to pursue their claims outside bankruptcy. 11 U.S.C. § 349. As the Supreme Court explained, a dismissal "revests the property of the estate in the entity in which such property was vested

immediately before the commencement of the case." *Jevic,* 137 S. Ct. at 979 (citing 11 U.S.C. § 349(b)). It thus "aims to return to the prepetition status quo." *Id.* While the Court acknowledged that a bankruptcy court may, "for cause, orde[r] otherwise" under the statute, this provision is "designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" *Id.* at 984 (quoting H.R. Rep. No. 95-595 at. 338 (1977)). It does not authorize a court to make "final distributions that do not help to restore the status quo ante or protect reliance interests acquired in the bankruptcy, and that would be flatly impermissible in a chapter 7 liquidation or chapter 11 plan because they violate priority without the impaired creditors' consent."[1] *Id.* at 984-985.

14. Here, there is no plan that requires that all administrative expense and priority claims are paid in full. Rather, the Debtors assert only that they have or will paid all undisputed or known administrative and priority claims, other than professional fees. Castner Decl. ¶¶ 8,9. In fact, there is no bar date for administrative expense claims that accrued after January 15, 2025.

15. This is not the appropriate standard. All administrative and priority creditors must be paid in full. A confirmed plan would establish an administrative claims bar date for claims that first accrued after January 15, 2025, and would ensure that all administrative and priority claims be paid prior to the payment of lower-priority claims.

**B. Plan Relief Cannot Be Achieved Through a Dismissal Order.**

16. Even if there were no priority-skipping distributions, the Structured Dismissal Motion should be denied.

17. A fundamental purpose of the bankruptcy laws is to bring about an equitable distribution of the bankrupt's estate. *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990).

18. The administration of a corporate debtor's estate is accomplished either through a proceeding commenced under chapter 7 or chapter 11 of the Bankruptcy Code. In a chapter 7 bankruptcy, the company's pre-petition assets are liquidated and distributed to creditors by a chapter 7 trustee. 11 U.S.C. § 701 et seq.

19. In a chapter 11 bankruptcy, in contrast, the debtor remains in possession and distributes estate assets through a "plan" that assigns to "classes" the various allowed claims and specifies the treatment each class of claims shall receive. 11 U.S.C. §§ 1122, 1123, 1141.

20. Chapter 11 of the Bankruptcy Code includes many protections for creditors and equity holders. Primary among those protections is the right of creditors and equity holders to vote for or against the proposed plan, along with the prohibition against soliciting acceptances or rejections of a proposed plan prior to transmitting "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). "Adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgement about the plan."

21. Chapter 11 contains numerous other protections to ensure that the plan is fair. *See, e.g.*, 11 U.S.C. §§ 1123 (contents of a plan); 1126 (right to vote on a plan); 1129 (confirmation requirements, including that plan be proposed in good faith and be fair and equitable to any rejecting class).

22. The Debtors do not provide adequate notice to stakeholders to determine if they will be treated fairly by the proposed distribution. In fact, there has been no disclosure concerning the role and duties of the Administrator, the process of determining the validity of

claims, the cost of administration, and other relevant information. Simply stated, the parties have not received a court-approved disclosure statement containing "adequate information" to enable such party to make an informed decision.

23. Creditors and equity holders do not have the ability to simply vote to make their voices be heard, but must file and prosecute an objection if they do not accept any of the conditions or provisions contained in the order.

24. The proposed "structured dismissal" provides for the type of relief that is permitted in a plan, but for which there is no statutory authority to include in a dismissal order. The proposed structured dismissal: (a) provides an end-of-case distribution scheme of the estates' assets; (b) authorizes the abandonment, destruction or disposal of the Debtors' books and records; (c) provides for the appointment of an Administrator; and (d) provides for the dissolution of the Debtors, all without providing adequate information, and without soliciting acceptances or rejections.

25. The Debtors, recognizing the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), submit that their end-of-case distribution scheme can be approved because the distributions contemplated are allegedly strictly compliant with sections 507(a) and 726 of the Bankruptcy. However, even if the distributions were strictly compliant with sections 507(a) and 726, that does not end the inquiry.

26. First, the *Jevic* decision did not approve end-of-case distributions through a dismissal order in a chapter 11 case. Rather, it left unresolved whether structured dismissals that do not violate priority are permissible. *Id.* at 985 ("We express no view about the legality of structured dismissals in general."). Indeed, the *Jevic* court discussed the type of transfers of estate assets that the Bankruptcy Code expressly permits in connection with a dismissal. It

concluded that, other than the reversal of transfers that occurred in the case to "restore all property rights to the position in which they were found at the commencement of the case," "[n]othing else in the Code authorizes a court ordering a dismissal to make general end-of-case distributions of estate assets to creditors of the kind that normally take place in a Chapter 7 liquidation or Chapter 11 plan . . . ." *Id*. at 984-85.

27. Second, the dismissal orders that the Debtors seek contain significantly greater relief than merely approving a distribution scheme that comports with the priority required by the Bankruptcy Code. Such relief "circumvents the Bankruptcy Code's procedural safeguards" and should be denied. *Id.* at 986 (citing with approval cases that denied approval of sales and other transactions that short circuited the requirements of Chapter 11).

28. The Supreme Court recognized that it cannot "alter the balance struck by the statute" even in rare cases. *Jevic*, 137 S. Ct. at 987. The Bankruptcy Code balances the interests of the Debtors to remain in possession and operate with the rights of creditors and equity holders by requiring that distributions of estate assets in chapter 11 be accomplished pursuant to a confirmed plan.

29. In the present case, the Debtors seek court approval to conclude administration of their estates without the procedural protections afforded to creditors by the Bankruptcy Code. The Debtors also seek relief which stretches beyond the statutory permission of 11 U.S.C. § 349. This type of remedy goes too far in ignoring the distribution scheme embodied in the Bankruptcy Code and the limits imposed by Congress on relief that can accompany case dismissal.

**C. <u>The Local Rules Provide A Stream-Lined Confirmation Process.</u>**

30. The relief sought through the Structured Dismissal Motion should be sought through confirmation of a combined plan and disclosure statement pursuant to Local Rule 3017-

2. The Structured Dismissal Motion is an inappropriate and unnecessary substitute for the Local Rule and fails to provide the protections of the plan process built into the Local Rule.

31. Local Rule 3017-2 permits the service of the Solicitation Motion on the 2002 list, waives the requirement for a hearing on the approval of the Disclosure Statement and Solicitation Motion if there are no objections, and permits service of the Disclosure Statement and Solicitation Order only upon approval. Thus, filing a Combined Plan and Disclosure Statement in accordance with the Local Rules would not have cost the estates a material additional amount, but would have protected creditors' substantive rights.

32. Much of the information provided in the Structured Dismissal Motion would be required in a liquidating plan. However, a liquidating plan would (a) ensure that there would be no priority-skipping distributions; (b) permit creditors to vote for or against the plan; and (c) permit the estate to obtain relief that is not permissible in a dismissal order.

33. Local Rule 3017-2 provides a structure to permit a debtor to exit bankruptcy through a confirmed plan in a streamlined, economical manner. The Debtors appear to seek the benefits of the Local Rule (e.g., filing a pleading that need not be served on the entire creditor body until it has been conditionally approved; eliminating certain creditors' rights to a distribution; and providing exculpation for estate professionals) while eschewing the burdens that protect the creditors (e.g., service of adequate information on the creditors to make an informed judgement; ensuring that the distribution scheme is followed; and permitting creditors to vote).

34. The Structured Dismissal Motion should be denied. The Debtors should comply with Local Rule 3017-2.

**D. <u>These Cases Should Be Converted To Chapter 7.</u>**

35. These cases should be converted pursuant to Section 1112(b), which provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> 11 U.S.C. § 1112(b).

36. "[C]ontinuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" is grounds to convert or dismiss a chapter 11 case under Section 1112(b). 11 U.S.C. § 1112(b)(4)(A). "Rehabilitation," as the term is used in 11 U.S.C. § 1112(b)(4)(A), means "to put back in good condition; re-establish on a sound, firm basis." 5 COLLIER ON BANKRUPTCY § 1112.03(2) (15th ed. 1980) (quoted *in re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D. W.Va. 1980)).

37. The examples of "cause" listed in Section 1112(b) are not exhaustive, and the Court has discretion in determining if cause exists. *See Matter of NuGelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed). The Court may convert or dismiss a case for reasons that are not specifically listed in Section 1112(b). *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991); *see also NuGelt*, 142 B.R. at 665.

38. Cause exists to convert the Debtors' cases under Section 1112(b)(4)(A) of the Bankruptcy Code because there is a "continuing loss to or diminution of the [Debtors'] estate[s] and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A) (bracketed text added). The first part of the analysis focuses on whether a debtor has suffered

negative cash flows or declining asset values post-petition. *See In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 713-14 (Bankr. D. Md. 2011). In determining whether there is "continuing loss" or "diminution of the estate," the Court can review a debtor's financial prospects and the financial records filed with the Court. *See Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa 2007). As to the second part of the analysis, "rehabilitation," as the term is used in 11 U.S.C. § 1112(b)(4)(A), "means 'to put back in good condition; re-establish on a sound, firm basis.'" *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D. W.Va. 1980) (quoting 5 COLLIER ON BANKRUPTCY § 1112.03(2), at 14 (15th ed. 1980)).

39. "'Negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b).'" *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (Bankr. S.D. Tex. 2015) (quoting *In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009)). A debtor should not be permitted to continue in control of its business beyond the point at which reorganization is no longer realistic. *See In re The AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). To satisfy Section 1112(b)(4)(A), a loss may be substantial or continuing-it need not be both. *See In re Creekside Senior Apartments, L.P.*, 489 B.R. at 61.

40. These Debtors are experiencing a substantial and/or continuing loss to, or diminution of, their estates. By filing the Structured Dismissal Motion, the Debtors acknowledge that there is “cause” under Section 1112(b). Specifically, the Debtors assert: “The Debtors are no longer conducting business, they have no remaining assets that could be used to satisfy claims other than the Committee Fund” and “the Debtors will continue to incur administrative expenses with no source to pay such expenses.” Structured Dismissal Mot. ¶ 45. Simply put, the Debtors' assets continue to lose value, to the detriment of their creditors.

41. The second part of Section 1112(b)(4)(A) - absence of a reasonable likelihood of rehabilitation -- is also met, given that the Debtors have ceased operations and have no cash flow. As the Debtors concede: "[Debtors] have no reasonable likelihood of rehabilitation." Structured Dismissal Mot. ¶ 45.

42. Thus, the Debtors have a "continuing loss to or diminution of the[ir] estate[s] and the absence of a reasonable likelihood of rehabilitation," which constitutes cause for conversion. 11 U.S.C. § 1112(b)(4)(A) (bracketed text added).

43. For the reasons set forth above, "cause" to convert these cases has been established under 11 U.S.C. § 1112(b)(4)(A). If a movant establishes "cause," the Court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment under § 1104(a) of a trustee or examiner is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). The only exception to this rule is what is set forth in sections 1112(b)(2) and 1112(c) of the Code.

44. Section 1112(b)(2) of the Code provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies ***unusual circumstances*** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; ***and***
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor ***other than under paragraph (4)(A)***-
>
> i. for which there exists a reasonable justification for the act or omission; and

ii. that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added).

45. By its terms, these cases do not fall within the exception set forth in Section 1112(b)(2) because cause does exist under Section 1112(b)(4)(A). Even if that were not the case, there are no unusual circumstances that establish that conversion is not in the best interests of the creditors of the Debtors' estates.

46. The party seeking conversion or dismissal has the initial burden of showing that cause exists. *See In re Products Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008); *In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994). The movant must satisfy its burden of proof by a preponderance of the evidence. *See In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 60 (6th Cir. BAP 2013).

47. If the movant establishes cause under Section 1112(b)(1), then the burden shifts to the debtor to show the existence of unusual circumstances, and that the other requirements of Section 1112(b)(2) have been met. *See In re Ramreddy, Inc.*, 440 B.R. 103, 112-13 (Bankr. E.D. Pa. 2009) (citing *DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, Nos. 09-3775, 09-3776, 2009 WL 3209728, at *4 (E.D. Pa. 2009).

48. If the Court determines that cause to convert exists under Section 1112(b)(1), as the U.S. Trustee believes it does, in light of the inapplicability of the exception set forth in § 1112(b)(2), the Debtors' cases must be converted or dismissed. *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.04; *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 559-60 (Bankr. M.D. Pa. 2007) (noting that the 2005 amendments to Section 1112 changed the statute's language "from permissive to mandatory" and limited the Court's discretion not to dismiss or convert a case if cause exists).

49. Upon the determination that cause exists under Section 1112(b), the Court must decide between dismissal and conversion based on the best interest of creditors and the estate. *See In re Am. Cap. Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). The Court has "wide discretion to use its equitable powers to make an appropriate disposition of the case." *Id*. at 163 (quotation marks and citation omitted). In determining what is in the best interests of creditors, the Court may compare creditors' rights in bankruptcy with their rights under state law. *See NuGelt*, 142 B.R. at 669.

50. Because there appear to be assets of the Debtors' estates available for distribution to claimants and creditors (known and unknown), the U.S. Trustee believes that conversion of the cases to cases under chapter 7, rather than dismissal, is in the best interests of the creditors and the estates. Further, conversion will allow the Court to retain jurisdiction to ensure that similarly-situated creditors are treated fairly, consistent with the Bankruptcy Code's priority scheme.

WHEREFORE, the U.S. Trustee respectfully requests that this Court deny the Structured Dismissal Motion, convert the above-captioned cases to cases under chapter 7, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**Regions 3 & 9**

Dated: July 10, 2025

BY: *\/s/ Jonathan W. Lipshie*
Jonathan W. Lipshie
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(202) 567-1124
Jon.Lipshie@usdoj.gov