**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>ONE TABLE RESTAURANT BRANDS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11553 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date: July 17, 2025 at 10:30 a.m. (ET)<br><br>Re: D.I. 669, 699 |

**REPLY TO OBJECTION OF UNITED STATES TRUSTEE
TO MOTION FOR ORDERS (I) ESTABLISHING DISMISSAL
PROCEDURES, (II) AUTHORIZING DISMISSAL OF THE DEBTORS'
CHAPTER 11 CASES, (III) APPROVING FINAL FEES AND EXPENSES
OF PROFESSIONALS, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") of the above-captioned jointly administered chapter 11 cases (the "Cases"), by their undersigned counsel, hereby file this reply (the "Reply") to the Objection [D.I. 699] of the United States Trustee ("UST") to the Debtors' *Motion for Orders (I) Establishing Dismissal Procedures, (II) Authorizing Dismissal of the Debtors' Chapter 11 Cases; (III) Approving Final Fees and Expenses of Professionals, and (IV) Granting Related Relief* [D.I. 669] (the "Motion").[2] In support of the Reply, the Debtors respectfully submit the following.

---

[1] The Debtors in these Cases, along with the last four (4) digits of their federal tax identification numbers, are: (1) One Table Restaurant Brands, LLC, a Delaware limited liability company (9853); (2) One Table Restaurant Operations, LLC, a Delaware limited liability company (7280), (3) Tender Greens OpCo, LLC, a Delaware limited liability company (7827); (4) Tocaya Holdings LLC, a Nevada limited liability company (8815); (5) Tocaya Organica, LLC, a California limited liability company (6720); (6) Tocaya Management, LLC, a Nevada limited liability company (6789); (7) BLT Steak LA LLC, a California limited liability company (4688); (8) Tocaya Venice LLC, a California limited liability company (0159); (9) Tocaya South Bay LLC, a California limited liability company (0401); (10) Tocaya Toluca LLC, a California limited liability company; and (11) Tocaya Santa Monica LLC, a California limited liability company (8134). The Debtors' mailing address is: 1201 W. 5th Street, Suite T-310, Los Angeles, CA 90017.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

1

10574901.1

**SUMMARY OF ARGUMENT**

1. By the Motion, the Debtors seek approval of procedures to dismiss the Cases. The Debtors served the Motion on approximately 322 creditors and no one objected. *See*, D.I. 689. In fact, the Official Committee of Unsecured Creditors (the "Committee") appointed in the Cases supports the Motion.

2. As the Court is aware, the Debtors liquidated all of their assets (including avoidance actions) and no longer conduct business. Post-sale, the bankruptcy estates of the Debtors (the "Estates") exist solely to effectuate an orderly exit from these Cases. While doing so, the Estates continue to accrue professional fees and UST fees, as well as the cost to file monthly operating reports and generally administer the Cases.

3. Contrary to the statements made in the Objection, the Dismissal Procedures do not violate the priority scheme set forth in the Bankruptcy Code. The Cases will not be dismissed until after all administrative claims, allowed priority claims and professional fees have been paid and the Certification filed so stating and verifying. General unsecured claims will be paid pro rata by an attorney now identified by the Committee as Dennis J. Shaffer, Esq. of Tydings & Rosenberg LLP (the "Administrator"). Moreover, the Motion does not seek any exculpation, despite the UST's incorrect statement to the contrary.

4. Given the status of the Cases, there appear to be only three options to dispose of the Cases: (1) dismissal; (2) filing of a plan; or (3) conversion. Every option other than dismissal is expensive and will result in a worse outcome for the general unsecured creditors in the form of a smaller distribution.

5. The Debtors do not have the cash or other assets available to fund a plan. The Debtors sold all their assets to their pre-petition lender with the consideration being in the form of

a credit bid, and an agreement to fund a limited amount of administrative expenses, which did not include the cost of a plan.  Thus, there is simply no ability for the Debtors to fund a plan process.

6. Finally, a second administrative bar date as the UST suggests is wholly unnecessary.  The administrative bar date was January 15, 2025.  The Debtors ceased operations at the end of November 2024 so other than the ongoing accrual of professional fees, there could not possibly be any administrative claims that have accrued since the January 15, 2025 bar date.

7. For all these reasons discussed in further detail below, the Debtors submit that the Motion should be granted and the objection of the UST, overruled.

## ARGUMENT

**A.  The Dismissal Procedures Do Not Violate the Priority Scheme Set Forth in the Bankruptcy Code.**

8. The Dismissal Procedures do not violate the priority scheme set forth in the Bankruptcy Code and, despite the UST's statement to the contrary, treat all similarly situated creditors fairly.

9. The proposed dismissal complies with applicable law governing distributions of estate property.  A final disposition "in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules" contained within the Bankruptcy Code. *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 978 (2017). In other words, a debtor may not use a dismissal as a means to distribute assets to a favored class of "low-priority general unsecured creditors" while "skipping" a disfavored class that would otherwise be entitled to priority of payment under a plan of liquidation. *See id.*  The Debtors do not propose to skip or otherwise deviate from the priority rules set forth in the Bankruptcy Code in any way.

3

10.     Courts post-*Jevic* have permitted structured dismissals so long as the dismissal does not violate the Bankruptcy Code's absolute priority rule or if all affected creditors consent. *See, e.g., BSP Agency LLC v. Katzoff (In re KG Winddown, LLC),* 628 B.R. 739 (Bankr. S.D.N.Y. 2021) (allowing a structured dismissal of the case over the objection of the United States Trustee where the distribution of remaining assets does not violate the priority rules); *see also, In re Veg Liquidation, Inc.,* 931 F.3d 730, 739 (8th Cir. 2019); *In re Old Cold LLC*, 879 F.3d 376 (1st Cir. 2018).

11.     Here, neither the Dismissal Procedures Order nor the Dismissal Order provides for the distribution of estate property to a lower priority class while skipping a disfavored class that would otherwise be entitled to priority of payment and thus, do not violate *Jevic*.

12.     As set forth in the Motion and the Declaration of Huntley Castner in support of the Motion (the "Castner Declaration"), all administrative claims have already been paid in full. All allowed professional fees and expenses and allowed priority unsecured claims will be paid in full prior to the dismissal of the Cases.[3] Finally, general unsecured creditors will be paid pro rata by the Administrator.

13.     Thus, since there is no violation of the absolute priority rule and there will be no class skipping, not to mention that the Committee supports dismissal and no creditor objected to the Motion, the Dismissal Procedures do not violate *Jevic* and the Motion can be granted.

**B.     The Other Options Suggested By the UST Are Not In the Best Interest of Creditors.**

14.     The Motion should be granted over the UST's objection because the only other options available to exit the Cases will be more expensive, will result in a reduced recovery for general unsecured creditors and therefore, are not in the best interest of creditors. If the Motion is

---

[3] Of note, no responses were filed to the Debtors' First Omnibus Objection to Claims (Non-Substantive) [D.I. 668] and as such, the Debtors expect an order sustaining the objections to the Disputed Priority Claims to be entered shortly.

10574901.1

denied, the other options to dispose of the Cases are either to file a plan or convert the Cases to Chapter 7 (which appears to be the UST's preference).

15. As to the option of proposing a plan, while the Local Rules do allow a somewhat streamlined process, it will still be costly. A plan process will involve fees and costs not just to draft the plan (including obtaining input from various parties), which in itself is expensive, but also to prepare the briefs to support confirmation, to prepare the ballots for voting, and ultimately, to prepare the confirmation order. In whole, a plan process will likely cost at least $50,000. On top of that, Stretto will need to prepare the plan packages and distribute them to all creditors, as well as serve the confirmation order on all creditors. The expense for serving all plan related documents will not be insignificant; likely $10,000 or more.

16. Very simply, a plan process will be costly, even if the Local Rules streamline the process, and the Debtors do not have any monies available to fund a plan process in any event.

17. However, the Dismissal Procedures allow the Debtors to mirror the plan process, but without the expense discussed above. The Administrator will be responsible for reconciling and making disbursements to general unsecured creditors, similar to the process normally employed under a Chapter 11 plan. Routinely under a plan, a third party plan administrator or disbursing agent is tasked with reconciling claims and making disbursements outside the purview or supervision of the Court. The Dismissal Procedures allow the same to occur, but will be much more cost effective and ultimately, much more beneficial for unsecured creditors.

18. There is no need for general unsecured creditors to vote on the proposed Dismissal Procedures like under a plan because the Cases will be dismissed and, other than the prior orders, rulings and judgments in the Cases remaining in place, the rights of all parties as of the Petition Date will be restored. But not only are the rights of the parties returned to status quo, creditors

will also receive a distribution in the Cases. Thus, dismissal under the Dismissal Procedures means all creditors do better than under a plan.

19. Finally, a plan process is not necessary to preserve any rights of the general unsecured creditors. Contrary to the comments of the UST, the Dismissal Procedures do not include any releases or exculpation of any kind.

20. The other option, conversion, is equally unattractive for general unsecured creditors. Chapter 7 is: (a) unnecessary and would provide no benefit to creditors; and (b) would impose significant additional administrative costs upon the Estates without any meaningful source of funds to satisfy such costs. Even if the Committee Fund is available after conversion, the fees and expenses of a Chapter 7 would invade and erode the Committee Fund to reduce the funds available for distribution to general unsecured creditors.

21. A Chapter 7 trustee would have extremely limited funds to satisfy remaining creditor claims. As noted earlier, all of the assets of the Debtors, including all avoidance actions, were sold as part of the sale. As a result, all pre-petition creditors would almost certainly fare worse in a Chapter 7 liquidation.

22. In addition, a Chapter 7 trustee will be paid his/her statutory fee and the Chapter 7 trustee will likely hire his/her own counsel. All of this will only further increase administrative expenses and decrease the recovery to general unsecured creditors.

23. For all these reasons, the Debtors submit that dismissal pursuant to the Dismissal Procedures is the best option for the Debtors to exit these Cases.

**C.  <u>An Additional Administrative Bar Date Is Not Needed.</u>**

24. Finally, the UST's assertion that an additional administrative bar date should be set is nonsensical.

25. As background, on November 27, 2024, the Debtors filed their Motion For Entry of an Order (I) Establishing Administrative Claims Bar Date, and (II) Approving Form and Notice Thereof [D.I. 468] (the "Admin Bar Date Motion").

26. As noted in the Admin Bar Date Motion, the Debtors' operations ceased no later than November 30, 2024. Thus, after such date, new administrative claims could not and should not have arisen.

27. The UST did not object to the Admin Bar Date Motion.

28. The Admin Bar Date Motion was granted by an order entered on December 11, 2024 [D.I. 486] and the administrative claims bar date was set as January 15, 2025.

29. Certain administrative claims were filed, all of which have been paid as set forth in the Castner Declaration.

30. Other than the ongoing professionals' fees, it seems impossible for any administrative claims to have accrued since January 15, 2025 because the Debtors' operations ceased approximately 45 days prior. Thus, there is no reason for another administrative bar date because there cannot possibly be any administrative claims to pay since such time.

**CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objection and approve the Motion and the proposed Dismissal Procedures to allow the Debtors to exit these Cases in the manner that preserves the best and highest recovery for creditors.

| | |
|---|---|
| Dated:  July 14, 2025<br>Wilmington, Delaware | **RAINES FELDMAN LITTRELL LLP**<br><br>*/s/ Mark W. Eckard*<br>Thomas J. Francella Jr. (DE Bar No. 3855)<br>Mark W. Eckard (No. 4542)<br>824 N. Market Street, Suite 805<br>Wilmington, DE 19801<br>Telephone: (302) 772-5803<br>tfrancella@raineslaw.com<br>meckard@raineslaw.com<br><br>and<br><br>**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**<br>Alan J. Friedman (admitted *pro hac vice*)<br>Melissa Davis Lowe (admitted *pro hac vice*)<br>100 Spectrum Center Drive; Suite 600<br>Irvine, CA 92618<br>Telephone:  (949) 340-3400<br>Facsimile:  (949) 340-3000<br>E-mail:<br>afriedman@shulmanbastian.com<br>mlowe@shulmanbastian.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

8

10574901.1